```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF IOWA
 2                         DAVENPORT DIVISION

 3

 4   UNITED STATES OF AMERICA,    )
                                  )
 5            Plaintiff,          )
                                  )
 6                                )  Criminal No. 3:07-CR 634
         vs.                      )
 7                                )  TRANSCRIPT OF HEARING
     CHRISTOPHER JAMES MCGEE,     )
 8                                )
              Defendant.          )
 9

10

11

12        The above-entitled matter came on for hearing on
     Thursday, November 5, 2009, at 11:14 a.m., at the Davenport
13   Federal Building, 131 East Fourth Street, Davenport, Iowa,
     before the Honorable John A. Jarvey, District Judge of the
14   United States District Court, Southern District of Iowa.

15

16                         APPEARANCES:

17   MELISA ZAEHRINGER, Assistant United States Attorney, U.S.
     Attorney's Office, Southern District of Iowa, Davenport
18   Federal Building, Third Floor, 131 East Fourth Street,
     Davenport, Iowa 52801, appearing for the United States of
19   America.

20
     JAMES BRYSON CLEMENTS, Attorney at Law, 1503 Brady Street,
21   Davenport, Iowa 52803, appearing on behalf of the Defendant.

22

23                    Heidi Krafka, CSR, RMR
                        Weston Reporting
24                        P.O. Box 393
                      Bettendorf, Iowa 52722
25                       (563) 355-8400
```

1                   P R O C E E D I N G S

2          THE COURT:  Please be seated.  We're here in

3    the matter of United States of America versus Christopher

4    James McGee.  It's Criminal Case 3-07-CR-634.  Mr. McGee was

5    before the Court in October for sentencing on Counts 1 and 2

6    of the March 12th, 2008, indictment.  He received a life

7    sentence on Count 1 because of two prior felony drug crimes

8    and a finding by the jury that more than 50 grams of crack

9    cocaine was involved in this conspiracy.  Perhaps confusing it

10   with a guideline sentence of life, the Court imposed the

11   statutory maximum on Count 2, which is 360 months, but it

12   wasn't a guideline of life.  It was a mandatory minimum of

13   life.  Therefore, the guideline calculation which the Court

14   believed was moot by reason of his life sentence is not moot

15   with respect to Count 2, and so the case -- the Court set the

16   matter for resentencing on Count 2 for today.  He is present

17   and represented by James Clements.  The Government is

18   represented by Melissa Zaehringer.  As I understand it, to

19   determine the advisory sentencing range, there are factual

20   disputes about the drug weight attributable to the defendant,

21   as well as the defendant contests convictions in paragraph 69

22   and 73 of the Presentence Report.  Yes.  The conviction at 69

23   was a juvenile conviction for which no points were awarded as

24   criminal history points.  Are those the disputes that need to

25   be resolved here today factually, Mr. Clements?

1          MR. CLEMENTS:  If I can have just a moment.

2    Actually, my client is claiming that both paragraph 69 and 70,

3    that those cases are not his.

4          THE COURT:  70 though was omitted from the

5    final version of the Presentence Report.

6          MR. CLEMENTS:  And then the other two would be

7    73 -- yeah, 73.

8          THE COURT:  Very well.  On the issue of drug

9    weight, did you intend to present evidence?

10          MS. ZAEHRINGER:  No, Your Honor.

11          THE COURT:  Additional evidence, anyway.

12          MS. ZAEHRINGER:  No, Your Honor, we would just

13    base it on the trial that Your Honor heard and all the

14    evidence that was presented during the trial.  I'd have

15    nothing additional as to that.

16          THE COURT:  Will you be presenting evidence on

17    the conviction in paragraph 73?

18          MS. ZAEHRINGER:  Yes, Your Honor.

19          THE COURT:  Call your witnesses.

20          MS. ZAEHRINGER:  I call Mary DeVine.

21          THE COURT:  Please come forward, ma'am.

22               MARY DeVINE,

23    was called as a witness and, having first been duly sworn to

24    testify the truth, the whole truth, and nothing but the truth,

25    was examined and testified as follows:

1          THE CLERK:  Please be seated.

2                    DIRECT EXAMINATION

3    BY MS. ZAEHRINGER:

4        Q.  Can you state your name for the record and spell your

5    last name.

6        A.  Mary DeVine, D-E capital V-I-N-E.

7        Q.  Where are you employed?

8        A.  Rock Island City Police Department.

9        Q.  How long have you been employed there?

10       A.  24 years.

11       Q.  And what's your official title?

12       A.  I am the criminalist for the police department.

13       Q.  And what jobs do you do?

14       A.  My primary function is as a crime scene investigator

15   and a latent fingerprint examiner.

16       Q.  Can you tell me about your fingerprinting background,

17   any education you've had, any training.

18       A.  Yes.  I've gone to the basic FBI school, 40-hour

19   school, as well as the advanced 40-hour FBI school.  I've

20   taken various classes through the State of Illinois as well as

21   through forensic science groups.

22       Q.  How many fingerprints have you analyzed in your

23   career?

24       A.  I'm going to say thousands.

25       Q.  Do you belong to any professional organizations?

1    A.  Yes, I belong to two, the Internation Association For

2  Identification as well as the Illinois Division of the IAI.

3  On the Illinois Division I'm a very active member.  I have

4  served as past president.  I serve on the training committee,

5  I put conferences together, I've spoken at conferences, and

6  I've also been the editor of the newsletter.

7    Q.  And you've testified in the past in various courts?

8    A.  Yes, I've testified in federal court several times,

9  both in Scott County as well as in Rock Island County, Webster

10  County, in Peoria Tazewell County, and of course the county of

11  Rock Island.

12    Q.  Just generally can you tell us what a latent print is

13  and what an ink print is?

14    A.  A latent print, very, very basic terms is the

15  impression of the ridges on your fingers and your palms left

16  behind on an object, and that can be recovered in various

17  forms by using chemicals or powder or even just photography

18  depending on what the latent looks like.  An ink impression

19  is, again, very simple, the fingerprint card.  It is a known

20  impression of the subject, whether it's a victim or the

21  arrested party.

22    Q.  In this particular case you were contacted by Katie

23  Tady from the probation office; is that correct?

24    A.  Yes.

25            MR. ZAEHRINGER:  May I approach the witness?

1          THE COURT:  You may.  You don't have to ask for

2   permission.

3   BY MS. ZAEHRINGER:

4      Q.  Showing you what's been marked as Government's

5   Exhibits 1, 2, and 3, do you recognize those?

6      A.  Yes.

7      Q.  What do you recognize Exhibit 1 to be?

8      A.  Exhibit 1 is my report regarding the findings of the

9   comparisons that I did.

10     Q.  Exhibit 2?

11     A.  Exhibit 2 is an ink impression of a person named

12  Christopher McGee.

13     Q.  And is that the fingerprints that you examined?

14     A.  Yes.  In fact, I initialed and dated and my police

15  number is on the finger that I chose to compare, which

16  happened to be the right thumb.

17     Q.  And Government's Exhibit 3, what is that?

18     A.  It is an ink impression of a Christopher James McGee

19  and, again, my initials, my police number, and the date in

20  which I used it to compare to Government Exhibit No. 2.

21          MS. ZAEHRINGER:  Move to admit Government's

22  Exhibits 1 through 3.

23          THE COURT:  They're received.

24          MR. CLEMENTS:  Thank you, Your Honor.

25  BY MS. ZAEHRINGER:

1      Q.  You were given this paperwork, Exhibits 2 and 3, from

2  Katie Tady; is that correct?

3      A.  Well, actually, I think her partner brought them

4  over, and I believe that was Laura Nebel.

5      Q.  And you reviewed you indicated the right thumb of

6  both of these exhibits?

7      A.  Yes.

8      Q.  And why did you choose those print over any of the

9  other fingers?

10      A.  It really doesn't matter which finger you choose to

11  compare.  I just happened to choose right the right thumb.

12      Q.  And what was your opinion in viewing Government's

13  Exhibits 2 and 3?

14      A.  They were made by one and the same person.

15      Q.  You indicated that you put your initials, your ID

16  number, and the date that you viewed these and made that

17  analysis?

18      A.  Yes.

19      Q.  And that was 9-22 of '09?

20      A.  Correct.

21      Q.  And that's recorded in a paragraph in Government's

22  Exhibit 1; is that correct?

23      A.  Yes.

24              MS. ZAEHRINGER:  I have no further questions.

25              THE COURT:  Mr. Clements?

1          MR. CLEMENTS:  Thank you.

2                      CROSS-EXAMINATION

3     BY MR. CLEMENTS:

4          Q.  You've testified about comparing these fingerprints

5     that were delivered to you, but you have no knowledge of how

6     these fingerprints were first taken; correct?

7          A.  That's correct.

8                      MR. CLEMENTS:  I don't have any other

9     questions.

10                     MS. ZAEHRINGER:  No further questions.

11                     THE COURT:  Thank you, ma'am.  You're excused.

12                     MS. ZAEHRINGER:  United States called Terry

13    Bumann.

14                      TERRY BUMANN,

15    was called as a witness and, having first been duly sworn to

16    testify the truth, the whole truth, and nothing but the truth,

17    was examined and testified as follows:

18                     THE CLERK:  Please be seated.

19                     DIRECT EXAMINATION

20    BY MS. ZAEHRINGER:

21         Q.  State your name for the record and spell your last

22    name.

23         A.  Deputy Terry Bumann, last name spelling B-U-M-A-N-N.

24         Q.  Where are you employed?

25         A.  I'm employed with the U.S. Marshal Service in

1  Davenport, Iowa.

2      Q.  How long have you been employed there?

3      A.  I've been with the Marshal Service for five years.

4  I've been in Davenport for two years.

5      Q.  As part of your duties do you fingerprint inmates

6  once they are booked into the Marshal Service?

7      A.  Yes, that is part of our processing.

8      Q.  Showing you Government's Exhibit 3, do you recognize

9  that?

10      A.  Yes, I do.  That is a printout from our JABS machine,

11  Joint Automated Booking System machine, when we take

12  fingerprints.

13      Q.  And who took those fingerprints?

14      A.  I took these fingerprints.

15      Q.  And the individual that you took those fingerprints

16  from, do you see him in the courtroom here today?

17      A.  Yes, I do.  He's sitting next to his attorney wearing

18  orange.

19              MS. ZAEHRINGER:  Let the record reflect he

20  identified the defendant.

21  BY MS. ZAEHRINGER:

22      Q.  Once you entered those fingerprints into what you

23  called JABS --

24      A.  JABS.

25      Q.  What happens then?

1      A.  When we send them off into JABS, it is similar to a

2  live scan for fingerprinting.  It goes directly into IAFIS,

3  and we usually get a return within an hour or so.  A positive

4  identification is cross-matched within the AIFIS system, and

5  if they've had a previous arrest, those fingerprints will

6  match up in there.  In there they've already been issued an

7  FBI number.  It will print out an FBI number for us.

8      Q.  And did that happen in this particular case?

9      A.  Yes, it did.

10      Q.  Looking at Government's Exhibit 6, is this the

11  printout that you get from that system?

12      A.  Yes, ma'am.

13      Q.  And in putting the fingerprints, you get the FBI

14  number and all related arrests and/or convictions?

15      A.  It gives the arrests, the convictions, aliases,

16  Social Security number, physical identifiers, fingerprint

17  code.  Any arrest that's been made gets put into the system,

18  and it'll link up with that FBI number.

19           MS. ZAEHRINGER:  Move to admit Government's

20  Exhibit 6.

21           MR. CLEMENTS:  No objection.

22           THE COURT:  6 is received.

23           MS. ZAEHRINGER:  No further questions.

24           THE COURT:  Mr. Clements?

25

1                    CROSS-EXAMINATION

2  BY MR. CLEMENTS:

3       Q.  The testimony you've given is concerning fingerprints

4  that were done when he was taken into the Marshal Service

5  custody; correct?

6       A.  Correct.

7       Q.  And you have no information directly regarding any

8  fingerprints that may have been taken in the year 2000 in Cook

9  County?

10      A.  No.

11                 MR. CLEMENTS:  No other questions.

12                 MS. ZAEHRINGER:  Nothing further.

13                 THE COURT:  Thank you, sir.

14                 MS. ZAEHRINGER:  United States called Katie

15  Tady.

16                      KATIE TADY,

17  was called as a witness and, having first been duly sworn to

18  testify the truth, the whole truth, and nothing but the truth,

19  was examined and testified as follows:

20                 THE CLERK:  Please be seated.

21                   DIRECT EXAMINATION

22  BY MS. ZAEHRINGER:

23      Q.  State your name for the record and spell your last

24  name.

25      A.  Katie Tady, T-A-D-Y.

1    Q.  Where are you employed?

2    A.  United States Probation.

3    Q.  How long have you been employed there?

4    A.  Since February 2008.

5    Q.  And what do you do for Probation?

6    A.  I'm a presentence officer.

7    Q.  Did you write the report on Christopher James McGee?

8    A.  Yes.

9    Q.  In doing so, the defense attorney objected to a

10   conviction; is that correct?

11   A.  Correct.

12   Q.  And how did you -- Did you secure fingerprints in

13   reference to the conviction in paragraph 73?

14   A.  Yes.  I contacted the Chicago Police Department and

15   provided them with the defendant's name, date of birth, and

16   indicated what fingerprints I needed, the date of arrest.

17   Q.  And how did you obtain these from Chicago?

18   A.  I contacted the supervisor in their fingerprint

19   division, and then he faxed them to me.

20   Q.  In looking at this Government's Exhibit 2, are these

21   the fingerprints that were FAXed over to you?

22   A.  Yes.

23   Q.  Looking at the last page, is that the FAX cover sheet

24   that was on the top of these reports?

25   A.  Correct.

1      Q.  Did you obtain fingerprints contained in Government's

2  Exhibit 3 from the U.S. Marshals in regards to paragraph 73?

3      A.  Our clerk has access to that system, and she printed

4  them out for me.

5      Q.  What did you do with these two documents, the

6  fingerprint cards?

7      A.  Due to being out of town, I had another officer,

8  Laura Nebel, take them over to Mary DeVine at the Rock Island

9  Police Department and had her analyze them.

10     Q.  Did your office then pick up these documents after

11 Mary DeVine had reviewed them?

12     A.  She stayed while she reviewed them, she was there.

13     Q.  Also in reference to paragraph 73, did you get any

14 other documents?

15     A.  Yes, I have the -- I had the clerk of court print out

16 their docket printout and then the police report as well.

17     Q.  And Government's Exhibit 4 is what?

18     A.  That is the clerk of court docket printout.

19     Q.  And Exhibit 5?

20     A.  Is the police report.

21     Q.  In reviewing the -- I'm sorry.

22          MS. ZAEHRINGER:  Move to admit Government's

23 Exhibit 4 and 5.  Do you have any objection to 4 and 5?

24          MR. CLEMENTS:  I have no objection to 4 and 5.

25          THE COURT:  4 and 5 are received.

1  BY MS. ZAEHRINGER:

2      Q.  In reviewing the arrest report from Chicago in

3  Government's Exhibit 5, did you note the address the defendant

4  gave on that report?

5      A.  Yes.

6      Q.  And what did you note that address to be?

7      A.  I believe it's 1938 South Trumbull Avenue.  Yes,

8  1938 South Trumbull Avenue, Chicago, Illinois.

9      Q.  In interviewing the defendant did he give you that

10 address?

11     A.  Yes.

12     Q.  When did he give you that address?

13     A.  When I asked him if he was to be released, where

14 would he reside at today.

15     Q.  Did probation go to that residence?

16     A.  Hold on one second.  Yes.  A probation officer at the

17 Northern District of Illinois went to that residence on

18 August 17th, 2009.

19     Q.  And who was present at that residence?

20     A.  The defendant's mother and siblings.

21             MS. ZAEHRINGER:  I have no further questions.

22             THE COURT:  Mr. Clements?

23                        CROSS-EXAMINATION

24 BY MR. CLEMENTS:

25     Q.  The records that you received regarding fingerprints

1  purporting to be from this earlier file, those are simply

2  records that you received; you weren't involved in the taking

3  of those fingerprints, were you?

4      A.  No.

5           MR. CLEMENTS:  No other questions.

6           THE COURT:  Thank you.

7           MS. ZAEHRINGER:  Your Honor, that's all the

8  evidence I have as far as the criminal history points.  I do

9  want the Court also to be informed the defendant objects to

10 paragraph 79, which is related to the conviction in 73.  The

11 defendant indicates that he didn't come to Iowa until

12 January of 2007.  However, per the testimony during the trial,

13 the defendant was here in the summer of 2006.  As the Court

14 may remember, on November 8th, 2006, Mr. Sanders was

15 confronted by the police, and at that time he made a phone

16 call to this defendant and wanted to buy an ounce of crack

17 cocaine, and there was an audiotape that was played.  The

18 defendant did not obtain the ounce to bring to Mr. Sanders.

19 However, there was that conversation on the phone, and at that

20 time that also documents that the defendant was here -- or in

21 Iowa City.

22           THE COURT:  Mr. Clements, do you have evidence

23 you wish to present?

24           MR. CLEMENTS:  Yes, the defendant wishes to

25 take the stand, Your Honor.

1                 THE COURT:  Come forward, sir.

2                 CHRISTOPHER McGEE,

3   was called as a witness and, having first been duly sworn to

4   testify the truth, the whole truth, and nothing but the truth,

5   was examined and testified as follows:

6                 THE CLERK:  Please be seated.

7                 THE COURT:  Go ahead.

8                 MR. CLEMENTS:  Thank you.  Your Honor, I have a

9   question first.  At this point do you want me to confine my

10  questions to the criminal history?

11                THE COURT:  Any matter for which you wish to

12  present evidence today.

13                MR. CLEMENTS:  Then in that case I would

14  suggest just for clarity that I'm going to be asking questions

15  going from my sentencing memorandum, which is Document 141.

16  If I follow that, that would allow the Government and the

17  Court to track where we're at and where we're headed.

18                THE COURT:  Thank you.

19                DIRECT EXAMINATION

20  BY MR. CLEMENTS:

21     Q.  Mr. McGee, I want to bring your attention to several

22  things in the Presentence Report that you've objected to.  And

23  the first thing that I'm going to refer to is on page 3 --

24  actually at the top it says page 4 of 50, but it's the

25  identifying data page, and it has a picture of you at the top

1   of that page.  You've objected to the use of three aliases.

2   The Presentence Report claims that you've used the alias

3   Andrell T. Bates.  Have you ever used that name in any

4   context?

5        A.  Never.

6        Q.  There's also a claim that you used the name

7   Chrustopher, spelled with a U, Chrustopher J. Pollnitz.  Have

8   you ever used that name?

9        A.  No, sir.  I have told people -- I've told police

10  officers my name is Christopher James Pollnitz, and that was

11  during the time I was in school under that name.  Never

12  Chrustopher.

13       Q.  And where does the Pollnitz come from?

14       A.  My father.

15       Q.  And they also claim that you've used the alias James

16  Taylor.  Have you ever used that alias?

17       A.  No, sir.

18       Q.  There's also a claim that you've used a different

19  Social Security number than the one given to you by the

20  Government.  The number that they claim that you've also used

21  is 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.  Have you ever used that number in any

22  employment or anything else?

23       A.  No, sir.

24       Q.  Moving on to -- this is referencing both paragraphs 8

25  and 21, and this has to do with the residence at which you

1 were arrested, and in paragraph 8 and paragraph -- starting in

2 paragraph 21, the Presentence Report indicates that this place

3 that you were arrested was your residence.  Were you residing

4 there?

5      A.  No, sir.

6      Q.  What were you doing there the day that you got

7 arrested there?

8      A.  I was visiting.

9      Q.  Did you pay the rent or lease on that apartment?

10     A.  No, sir.

11     Q.  Did you have it -- Were any of the utility bills in

12 your name?

13     A.  No, sir.

14     Q.  Did you ever give that address as a place of

15 residence claiming to anyone that you did reside there?

16     A.  No, sir.

17     Q.  Beginning in paragraph 8 through paragraph 20 of the

18 Presentence Report, it -- the Presentence Report details a lot

19 of activities regarding your codefendant, Mr. Sanders, and

20 you've objected to those drug amounts being included in your

21 Presentence Report.  The report is not claiming that you were

22 present during those incidents, but that you were in a

23 conspiracy with Mr. Sanders and, therefore, these are relevant

24 drug amounts.  Were you involved in Mr. Sanders' drug

25 activities?

1      A.  No, sir.

2      Q.  Did you supply him with the drugs that are listed

3  here in these paragraphs?

4      A.  No, sir.

5      Q.  You've also objected to the inclusion of marijuana

6  specifically.  You've objected to all of these amounts

7  regarding Mr. Sanders, but there was also a -- in paragraph 14

8  and 15, I believe, also 18 and 19, there were amounts of

9  marijuana that were attributed to you, and you had objected to

10  the inclusion of any marijuana.  Can you explain to the Court

11  why you don't think -- beyond the fact that these weren't your

12  drugs, but why you don't think that you should be held

13  accountable for any marijuana in this case at all?

14      A.  Because I wasn't charged for marijuana.

15      Q.  And what were you charged with?

16      A.  I was charged with cocaine.

17      Q.  And your indictment did not include any reference to

18  marijuana?

19      A.  No, sir.

20      Q.  Turning to paragraph 22, there's a reference to

21  something that was discussed at trial, and this was when law

22  enforcement saw someone go behind one side of this apartment

23  building and that they claim that they saw you go beside the

24  other side of that apartment building.  They've characterized

25  this that you were meeting someone behind that building for a

1  drug deal.  Were you, in fact, meeting with anyone?

2      A.  No, sir.

3      Q.  Did you have anything to do with the other person

4  that had walked on the other side, the other corner of the

5  building?

6      A.  No, I didn't.

7      Q.  Did you deliver any drugs to anybody behind that

8  building at that time?

9      A.  No, sir.

10     Q.  There's also a reference to you and several other

11 individuals going up to a taxi and the officers indicating

12 that they thought it was consistent with a sale of drugs.  Did

13 you go up to a taxi, in fact?

14     A.  Yes, sir.

15     Q.  And who was in the taxi?

16     A.  I'm not -- I forgot the guy's name, but it was a guy

17 that I played basketball with, and he was driving the taxi

18 cab, and he was driving his -- and that was his job.  He was

19 driving for a taxicab service.

20     Q.  And what was your purpose in going up to talk with

21 him?

22     A.  I was asking him was he going to be at the gym that

23 night, and the other guys that went with me up to the car was

24 also interested in going to the gym that night.

25     Q.  Was there any discussion of drugs?

1    A.  No, sir.

2    Q.  Did you give this person any drugs?

3    A.  No, sir.

4    Q.  In paragraph 23 there's a reference to a drug amount

5    that includes cocaine that was located in that residence that

6    night.  It includes a total amount of 57.33 grams of cocaine.

7    You've objected to that cocaine amount based upon the jury's

8    verdict in Count 2.  Can you explain to the Court why you feel

9    that 57.33 grams should not be included in your Presentence

10   Report?

11   A.  Because, first of all, I had no idea that it was in

12   the house, and second of all, the jury found me guilty of

13   3 grams and nothing to do with the 57.33 grams.

14   Q.  Paragraph 25 indicates that you were interviewed, and

15   it claims that you were Mirandized before that interview.

16   Were you, in fact, Mirandized by the officers before that

17   interview?

18   A.  No, sir.

19   Q.  Now, there was a recording that purported to come

20   from that interview that was admitted during trial, and

21   according to the Presentence Report, their characterization of

22   that is that you admitted that, in fact, you were in a drug

23   conspiracy with Mr. Sanders and that you gave some details

24   about that.  Was that true?

25   A.  No, sir.  When I referred to the drugs being mine, I

1   was referring to the 3 grams.  I've -- I never said anything

2   about being in any conspiracy with anybody.

3       Q.  When you're talking about the 3 grams, you're talking

4   about the grams of cocaine that were found under the mattress?

5       A.  Yes, sir.

6       Q.  Did you ever travel to Chicago to get cocaine for

7   Mr. Sanders?

8       A.  No, sir.

9       Q.  Did you go to Chicago to get cocaine for anyone else?

10      A.  No, sir.

11      Q.  Did you tell them at that point that you were

12  residing at that apartment?

13      A.  I told them that stayed there with Shakita Edwards,

14  but I didn't mean it as lived there.  I was telling them that

15  that's who I was there visiting.  That's what I was referring

16  to.  They took it out of context.

17      Q.  You've objected to paragraphs 28 and 29 which

18  referred to Miss Edwards' allegations and your testimony at

19  trial.  Did she testify truthfully at trial?

20      A.  No, sir.

21      Q.  Were you involved in a drug conspiracy with her?

22      A.  No, sir.

23      Q.  Paragraphs 30 through 35 discuss the arrest of

24  Andrell Sanders and Julia Sharkey.  The Presentence Report

25  doesn't claim that you were present, but it does include in

1  paragraph 34 50.95 grams of cocaine base that they are

2  attributing to you.  Why do you object to that drug amount?

3      A.  I object to it, because I had nothing to do with it,

4  didn't know anything about it, and to my knowledge that amount

5  wasn't attributed to me in the PSR report.

6      Q.  In a number of paragraphs and at trial Mr. Sanders

7  made allegations against you as being involved in cocaine

8  sales and, in fact, supplying him with cocaine on occasion.

9  Did he testify truthfully?

10     A.  No, sir.

11     Q.  Paragraph 37 talks about you reconnecting with

12  Mr. Sanders in Iowa in February or March of 2007 and that the

13  two of you began selling cocaine base together at that time.

14  Where were you in February and March of 2007?

15     A.  In February I was staying with my mother, and in

16  March I believe I -- in March -- in the end of March I was in

17  Iowa City visiting another friend, and I got arrested on the

18  25th, so yeah, the end of March I was in Iowa City.

19     Q.  Were you with Mr. Sanders at the time?

20     A.  No, sir.

21     Q.  And when you indicate that in February you were

22  residing at your mother's and that that's where you were

23  present, where does she live?

24     A.  1938 South Trumbull in Chicago, Illinois.

25     Q.  Were you present in Iowa in February at all?

1       A.   No, sir.

2       Q.   And how long prior to your arrest at the end of March

3  had you been in Iowa?

4       A.   Excuse me?  Can you repeat the question?

5       Q.   You indicated that near the end of March you were

6  arrested in Iowa, that you were here visiting someone else.

7  How long had you been in Iowa at that time?

8       A.   Probably a little over a week.

9       Q.   And who were you visiting at that time?

10      A.   This girl by the name of -- they called her Kiki, but

11 her real name was Kishandra Criven (phonetic).  She stayed in

12 Lakeside Apartments.

13      Q.   In paragraph 39 the Presentence Report claims that

14 in -- sometime before August of 2006 that you moved to Iowa

15 with Angelo Scott.  Did you move to Iowa at that time?

16      A.   No, sir.

17      Q.   Had you moved to Iowa at all?

18      A.   I've never lived in Iowa, sir.

19      Q.   Did you live with Angelo Scott at any point?

20      A.   No, sir.

21      Q.   In paragraphs 51 and 61 the Presentence Report talks

22 about role assessments, role in the offense, and you've

23 indicated that -- while maintaining your innocence in this

24 case that if the probation office has concluded what it has

25 regarding Mr. Sanders and that his role in the alleged offense

1  was much greater than what they claim yours was, that you

2  should qualify for a reduction; is that correct?

3     A.  Yes, sir.

4     Q.  Why do you think that you're entitled to a mitigating

5  role adjustment?

6     A.  Well, I read in a guideline book as well as a book

7  entitled Busted By the Feds that according to what they

8  claimed I was responsible for, I thought that would qualify

9  for a reduction or something.  It was something I read when I

10 made the objection, but I was not involved in any conspiracy,

11 but for the part they said I played, I thought that that

12 qualified me for the part.

13    Q.  In paragraph 55 there's also discussion about

14 acceptance of responsibility.  You have indicated in your

15 objections that you believe that the jury verdict on the

16 lesser amount in Count 2 should qualify you for a reduction

17 for acceptance of responsibility.  Can you explain to the

18 Court why that should be?

19    A.  I thought when you admitted to your part as far as

20 what I did, admitted to possession of 3 grams for my personal

21 use, I told the police right away that it was mine and nobody

22 else knew about it, that I bought it, it was mine for just me,

23 I thought since I admitted it, that that was what qualifies

24 you for a 3-point reduction, 2-point reduction, something like

25 that.

1    Q.  And this is based upon the jury apparently not

2  believing that the larger amount of cocaine was yours in

3  Count 2?

4    A.  Exactly.  Exactly.

5    Q.  Okay.  Moving on to criminal history and let's take a

6  look at paragraph 69, which is this juvenile case on which the

7  fingerprints were admitted into evidence, the Presentence

8  Report indicates that the person was arrested under the name

9  of Andrell Bates.  Have you ever been arrested under that

10  name?

11    A.  No, sir.

12    Q.  And have you ever used that name?

13    A.  No, sir.

14    Q.  And in reviewing this item in the Presentence Report,

15  did it appear to you that this was you that was arrested?

16    A.  Well, seeing as how the person was used the name

17  Andrell Bates, that's what made me say that that couldn't have

18  been me, because I've never told the police at any time that

19  my name was Andrell Bates.  That's what I was going off of.  I

20  really didn't -- I really don't remember any arrest like that.

21    Q.  Okay.  In three paragraphs in the criminal history

22  section there are discussions in which it's alleged that you

23  were involved in street gangs, and you've objected to that.

24  Specifically there's an allegation in paragraph 71, which is

25  the first one, claiming that you admitted that you were a

1   member of the Vice Lords.  Have you ever belonged to a street

2   gang?

3        A.  No, sir.

4        Q.  Have you ever formally associated with a street gang?

5        A.  Formally associate, you mean been a part of it?  No,

6   sir.

7        Q.  Do you know friends that are street gang members?

8        A.  Yes, sir.

9        Q.  Have you ever participated with them in gang

10  activity?

11       A.  No, sir.

12       Q.  Have you been involved in any other street gang other

13  than the Vice Lords?

14       A.  No, sir.

15       Q.  You've also indicated that paragraph 73, which is a

16  case out of Cook County, Illinois, in June of 2006, was not

17  you.  This is the incident that according to the police report

18  that's cited is this claim that you were arrested after

19  officers observed you shouting rocks at subjects passing by.

20  Was that you?

21       A.  To my knowledge it wasn't, sir, because I was still

22  on parole from being released from Illinois River, and my

23  parole officer would have had grounds to violate me, and

24  seeings how I had no violations and I don't remember any

25  arrest like that, I'm pretty sure I would have remembered

1  being arrested for rocks and blows or anything of that nature

2  being on parole, because it would have been some type of

3  penalty taken place, and none was, so I said it wasn't me, and

4  I don't remember anything like that, so that's another reason

5  I said that was a mistake also.

6          THE COURT:  The picture looks an awful lot like

7  you.  Did you see that?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Okay.  Go ahead.

10 BY MR. CLEMENTS:

11     Q.  You've also indicated that you don't believe that

12 this offense, soliciting unlawful business, should garner a

13 criminal history point.  It's allotted one point in the

14 Presentence Report, and, in fact, in your objections you

15 basically said that's the -- an equivalence to a vagrancy; is

16 that correct?

17     A.  Yes, but you -- when I talked to you about it, you

18 corrected me and told me it wasn't a vagrancy, so I guess it

19 does qualify for a point, but I read in the book -- that's

20 what my whole objection was, I read in the sentencing

21 guideline that certain cases don't qualify for a point, and I

22 thought that was one of them.

23     Q.  Now, this also has the issue about whether or not you

24 were on probation at the time of committing the current

25 offense, and the Government made the point that there was a --

1   you've claimed that you came to Iowa at the end of January of

2   2007, and the Government made the point that there was

3   testimony from Mr. Sanders that he was calling you on his cell

4   phone and this was at a point earlier than January of 2007.

5   Did he call you?

6        A.  I believe that call was placed to me, yes, sir.

7        Q.  Were you involved with him in any drugs at the time?

8        A.  No, sir.

9        Q.  When you took this call in 2006, were you in Iowa at

10  that time?

11       A.  No, sir.

12              MR. CLEMENTS:  I don't have any other questions

13  at this point, Your Honor.

14              THE COURT:  Ms. Zaehringer?

15                    CROSS-EXAMINATION

16  BY MS. ZAEHRINGER:

17       Q.  You indicated that you've never lived in Iowa?

18       A.  Yes, ma'am.

19       Q.  Where were you living during this time period then?

20       A.  What time period is that?

21       Q.  During this conspiracy time period that we charged,

22  '06, '07.

23       A.  I was living in Chicago, ma'am.

24       Q.  But you would come here and spend nights with your

25  girlfriend on occasion?

1       A.  Yes, ma'am.

2       Q.  Store drugs at your girlfriend's house?

3       A.  No, ma'am.

4       Q.  Stored 3 grams under the mattress?

5       A.  I didn't store it.  I hid it.  That's storing, I

6    guess.

7       Q.  And you had other items in her house as well?

8       A.  Change of clothes.

9       Q.  You had a sock full of packaging material in her

10   drawer?

11      A.  No, ma'am.

12      Q.  You never drove to Chicago with Sanders, Angelo

13   Scott, Sara Humphries, Shakita Edwards?

14      A.  I've drove to Chicago, yes.  They dropped me off at

15   my mother's house before.

16      Q.  So you did make trips with them, and then they'd pick

17   you up and go back to Iowa City?

18      A.  No, ma'am.  It didn't work like that.  They took me

19   up there.  I believe at the time they brought me up there,

20   that group you just mentioned, when I did go back, me and

21   Shakita caught a bus back.

22      Q.  Do you recall during the trial we played an audiotape

23   with you on it during the interview?

24      A.  Yes, ma'am.

25      Q.  And that was your voice?

1    A.  Yes, ma'am.

2    Q.  And you told the officers earlier that day that you

3  sold crack twice?

4    A.  No, ma'am.

5    Q.  You don't remember saying that?

6    A.  No, ma'am.

7    Q.  You don't remember saying your source was in Chicago

8  and his name was Flats or Fats?

9    A.  No, ma'am.

10    Q.  You don't remember saying that?

11    A.  I spoke about an individual by that time, but I did

12  not say he was my source, I worked for him, sold anything to

13  him, nothing like that.

14    Q.  Did you hear it during the trial on the audiotape?

15    A.  No, ma'am.

16    Q.  Do you know who Angelo Scott is?

17    A.  Yes, ma'am.

18    Q.  Did you grow up with him?

19    A.  No, ma'am.

20    Q.  The role assessment that you want, the mitigating

21  role, your claim is that if somebody gets an aggravating role,

22  then the other person should get a mitigating role; is that

23  what your argument is?

24    A.  Sort of.  My argument was if they placed one person

25  at one part and just basically the other part is left open for

1  the other people to be placed in, would qualify that person

2  for that adjustment or whatever.

3      Q.  Did you know that more than one person could be a

4  supervisor or have the aggravating role?

5      A.  I'm not familiar with it.

6      Q.  And then you claim for the acceptance of

7  responsibility, you claimed 3 grams, and so you should get

8  acceptance?

9      A.  I said that that -- the way it -- the 3 grams was not

10  for a conspiracy, but in the way they're trying to involve me

11  in a conspiracy, that's why I was saying that's why I should

12  qualify for the role that I said.

13      Q.  But for the acceptance.  You didn't admit to the

14  conspiracy when you went to trial on the conspiracy and were

15  found guilty?

16      A.  No, ma'am, I didn't.

17          MS. ZAEHRINGER:  I have no further questions.

18          MR. CLEMENTS:  I have no redirect on this, Your

19  Honor.

20          THE COURT:  You may return to the table.  Any

21  additional evidence?

22          MR. CLEMENTS:  No additional evidence.  Just

23  argument, Your Honor.

24          THE COURT:  The Government bears the burden of

25  proof on these issues.  Let's have her go first.

MS. ZAEHRINGER: Your Honor, as to the role, the mitigator role, that the defendants claim, there's no case law that suggests that one person gets an aggravating role and the other person gates a mitigating role. In fact, the case law is opposite where you can have more than one supervisor. Based on the testimony in the trial, it's clear that this defendant does not qualify for a mitigating role. He was traveling to Chicago to get drugs one time every two weeks, he was supplying Lakeside, Broadway, and Emerald Apartments. During his Mirandized statements he told the officer that his source was in Chicago and his name was Flats and that he sells with Sanders. Based on all that evidence, he doesn't warrant the mitigating role.

As far as the acceptance or the responsibility, obviously the defendant denied and objected to all of the offense conduct except for the 3 grams. He's not admitting to anything regarding conspiracy, and that's what he was found guilty of. There's no case law out there that indicates that he is warranted the acceptance of responsibility reduction.

As to the criminal history points, the defendant claims that it's the same as vagrancy. Looking at sentencing guidelines, 4A1.2(c)(2), it does not -- this conduct in the police report is not the same as vagrancy. Therefore, it should be awarded the one point. Based on the testimony supplied here today from Mary DeVine, the marshal, and the

1   probation officer, it's clear that this defendant is the

2   individual and did commit the crime in paragraph 73.  Based on

3   the trial testimony from Mr. Sanders, it's clear that the

4   defendant was here in Iowa City in the summer of 2006, he was

5   on probation during the time he committed this conspiracy.

6   Therefore, it is warranted the two points for the -- in

7   paragraph 79.  I think those are all the issues that the

8   defense raised.

9            THE COURT:  Thank you.  Mr. Clements?

10           MR. CLEMENTS:  Thank you, Your Honor.  I won't

11  repeat the things that my client has just said on the stand,

12  but I will draw your attention to two items, and one is that

13  based upon the verdict in Count 2, my client certainly feels

14  that the larger amount of drugs that the jury refused to find

15  him in possession of should be backed out of the drug amount.

16  Also, my client has indicated in the sentencing memorandum

17  that he seeks the Court -- he asks the Court to treat the

18  crack amount as if it was powder.  Based upon the current

19  moves in congress to change the law and the -- ask the Court

20  to at least grant a variance that the drug amount would be

21  treated as if it were powder cocaine, not crack cocaine.

22           THE COURT:  Thank you.  I find that the

23  probation office appropriately determined that Mr. McGee

24  starts with a base offense level of 34.  Just considering the

25  crack cocaine alone, in order to be a 34, he's got to be

within -- between 500 grams and 1.5 kilograms. For the credible testimony of the trial, while still an estimate is a very reasonable and appropriate estimate in this case, he clearly was well over 500 grams just based on the credible testimony of Mr. Sanders. I do attribute the 57.33 grams to the defendant by preponderance of the evidence recognizing that the jury rejected that with a standard of proof beyond a reasonable doubt. I find that the man before the Court, Christopher McGee, is the same man that was convicted of the crime set forth in paragraph 69 and 73. The soliciting unlawful business conviction in paragraph 73 is more akin to distribution of crack cocaine than it is to vagrancy. It was appropriately given a criminal history point. He was on probation for that offense at the time of this offense and appropriately given 2 additional points for that. This defendant was deeply involved in this conspiracy and is not entitled to a mitigating role and certainly in light of the testimony here today and at trial is not entitled to points off for acceptance of responsibility. Accordingly, the probation office appropriately determined under the Sentencing Guidelines that he has an offense level of 34, a criminal history of 4, which would on Count 2 suggest a range of imprisonment between 210 and 262 months. I'd hear first from you, Mr. Clements, and then from Mr. McGee, and then from Ms. Zaehringer as to the sentence to be imposed on that count.

1          MR. CLEMENTS:  Thank you, Your Honor.  I would

2     argue that the sentence at the bottom of the guideline range

3     is more than adequate in this circumstance.  He's already

4     facing a life sentence on Count 1.  I would also like to ask

5     the Court that after pronouncing sentence today, if the Court

6     would appoint new counsel for him to pursue his appeal.  He

7     has filed at least five or six motions for new counsel during

8     this case.  He does not want me handling his appeal, and,

9     again, he wants me to ask the Court to appoint new counsel for

10    his appeal.  Thank you, Your Honor.

11         THE COURT:  Mr. McGee, is there something you

12    wish to say before sentence is imposed?

13         THE DEFENDANT:  Yes, I would.  I would just

14    like to address the fact that the Government keeps saying that

15    the phone call that was made proved that I was in Iowa, and

16    those were two cell phones.  The call could have been taken

17    anyplace, which I received it in Chicago, and not any drugs

18    were mentioned during the phone call.  And I have some other

19    things I would like to mention that I have wrote down.  Also I

20    would like to address the fact that I was not on probation

21    during the time that this case took place.  It is in the PSI,

22    and it states that the probation was over with well before

23    this started.  The probation ended around October 6th, and the

24    alleged conspiracy started October 20 something.  I'm not sure

25    what the exact date is, but the probation was no longer going

1  on.  I would like to read these letters I wrote.

2          I'm not sure how this federal system works because

3  this is my first time here, but I received a letter not too

4  long ago saying that no judgment has been made in my case, but

5  on October 9th when I got sentenced the first time, I thought

6  that was a judgment in my case.  Now it's saying today that we

7  are doing it all over again, so I have a couple of things I

8  would like to address to the Court.  I want to put on record

9  that these issues may be mentioned in these letters, but I

10  just write them down as they come to my attention, so if I

11  mention something twice, please forgive me.  I was not given

12  the allowed amount of time to go over my PSI with my lawyer.

13  I also would like to address the fact that a lot of rules that

14  have been brought to my attention in the federal guideline

15  book is being ignored.

16          When I first met Mr. James Bryson Clements, he

17  automatically made up in his mind to get my case over with as

18  soon as possible.  One of his attempts to do so was to tell me

19  that I was facing two life sentences and that my case was not

20  winnable at trial or by filing any motions.  Later on a visit

21  that he had made to me at Knox County, I asked him what

22  evidence does the Government have against me?  He told me that

23  he didn't know, which I knew he didn't know, because there was

24  no evidence against me at the time, only against others that

25  the Government was trying to connect to me.  Since my lawyer

1  made those statements about me losing without having any

2  evidence to support their comment, I knew he wasn't planning

3  on proving my innocence.  Later I asked for various papers

4  concerning my case, and I was denied having copies.  I was

5  denied copies of my discovery and Grand Jury statements,

6  police reports, although he made it clear that he had them

7  hisself.  After all this behavior on behalf of my lawyer, I

8  was upset, and I was searching for opinions on what to do from

9  other inmates, because I don't have access to federal law

10  books.  I was told my constitutional right is to change

11  lawyers if I'm not happy with the performance of my current

12  lawyer, but when I filed a motion for a new counselor, I was

13  denied.  That wasn't the only constitutional right that was

14  ignored.  The constitutional right which is Amendment 5 that

15  bars two jurisdictions from dealing with the same matter at

16  the same time was also ignored.  I tried to bring up this fact

17  that a warrant and a federal indictment was issued for me at

18  the same time I was handling this case in state court.  The

19  indictment and the warrant was issued for me December 13th,

20  2007, and the case wasn't dropped until March 20 of 2008.  My

21  lawyer would read the motions I gave him and then redo the

22  motions leaving out vital information, so I requested all of

23  my motions to be attached to his motions.  I also made

24  complaints about the fact that my lawyer sent me papers,

25  showing his lack of attention shown to my case.  Mr. Clements

1   sent me papers saying do not communicate with your Codefendant
2   Spires, but I did not have a codefendant named Spires.  I
3   later found out that another one of Mr. Clements' clients has
4   a codefendant named Spires, which means he sent me papers that
5   he should have sent to his other client showing his lack of
6   attention that he gives to my case.  My lawyer, Mr. Clements,
7   also disregarded the federal rules and regulations by allowing
8   the prosecutor to give him some enhancement papers that were
9   filed during my trial.  And to my knowledge the enhancement
10  papers are supposed to be filed before trial.  The first time
11  I got sentenced, Mr. Clements said he would put me on the
12  stand to speak about my objections to my PSI, but he didn't.
13  I have close to 30 objections involving -- or proving that I'm
14  not involved in any conspiracy.  The jury somehow found me
15  guilty of at least 50 grams involved in that conspiracy, but
16  in my PSI there was three controlled buys conducted by
17  Mr. Sanders and police informants, not one involving me.  The
18  controlled buys added up to 11.6 grams and were added with the
19  57.33 grams that the police found at a female's house that I
20  was visiting on July 7, 2007.  How can I be responsible for a
21  controlled buy that has nothing to do with me nor did I have
22  any knowledge of until I read the PSI?  Or how can I be
23  responsible for drugs found in someone else's apartment.  When
24  I went to trial, the jury believed me when they heard I
25  admitted to 3 grams found in the apartment, but I deny any

1  knowledge of the 57.33 grams, so the jury found me guilty of

2  possessing less than 5 grams of cocaine.  If the jury didn't

3  attribute the 57.33 grams to me, how is the PSI report going

4  to attribute the grams to me?  The PSI also said my offense

5  level was 34, but in the federal sentencing guideline book, it

6  said when a person is found guilty of at least 50 grams, the

7  offense level should be 30.  My lawyer knows this but didn't

8  address the fact at my sentencing on October 9th.  If you hold

9  me responsible for the drugs I had anything to do with, you'll

10  only have the 3 grams that I admitted to having for my

11  personal use on July 7th, 2007, and no conspiracy would

12  involve me, which is why I believe the 11.68 grams from

13  Mr. Sanders' controlled buys and the 57.33 grams found in the

14  house is trying to be blamed on me so that a gram amount could

15  exist.  Without those bogus amounts mentioned, the drug amount

16  would be 3 grams.  However, the PSI report said that because

17  Sanders said him and I sold 2 ounces every two weeks for ten

18  months, 1,126.9 grams were added to the first two bogus

19  amounts.  In total the PSI is saying I'm responsible for

20  1,195.7 grams, and that is not possible, because according to

21  the federal guideline book, at least

22  50 maybe, no more than 150, is the range to follow when a

23  person is found guilty of at least 50, 50 grams.  Again, if

24  you take away the statement of a person such as Andrell

25  Sanders who was involved in controlled buys and finally on

1  February 7th, 2007, he was picked up after being in another

2  controlled buy and there was -- and there wasn't any denying

3  his involvement in a drug conspiracy since he and his

4  accomplice were caught in the act.  Sanders wanted to appear

5  to be cooperating, so he told the police stories that he

6  thought would help him out of trouble.  Take away the obvious

7  lies and bogus drug amounts, and Count 1 of my charges

8  wouldn't and shouldn't exist, and I should be only charged

9  with possessing 3 grams of cocaine.  I believe that is just a

10  simple possession.  I'm not asking for any rules to be broken.

11  In fact, I'm asking the complete opposite, a man that is flat

12  out guilty and is told by his attorney that he would be

13  facing -- that he would be facing life would do whatever, say

14  whatever he could to help hisself, lessen his sentence just

15  like Andrell Sanders did.  I'm not mad at Mr. Sanders or the

16  officers who lied, not even -- I'm not even mad at the

17  prosecutor.  They're all doing what is expected of them to

18  help their situations, but I would like the Court to pay

19  attention to the factual evidence considering everyone's

20  motives and simply follow the rules.

21          My current lawyer is purposely trying to complicate

22  my appeal situation.  He is trying to rush and file an appeal

23  on Count 1 of my charges without confirming with me the things

24  I wish to appeal.  I've given him my objections to my PSI

25  along with other issues I would like for him to address at

1  sentencing, but at the first sentencing which was

2  October 9th he failed to do either one properly. I'm

3  wondering if his failure to comply with my request is an

4  attempt to allow an outrageous amount of time be issued at my

5  sentencing. Such behavior wouldn't surprise me, because I've

6  done nothing but complain about his ineffective counseling.

7  Ever since the day we met he has been showing me signs that he

8  is either working against me and working with the prosecutor.

9  I heard from another inmate that I'm incarcerated with that

10  when he went to trial, the judge was upset with a few people

11  incarcerated for filing a lawsuit for being detained without

12  federal law books. The judge -- He said the judge had even

13  went as far as saying that he would be issuing the high end

14  allowed at everybody's sentencing date, which is exactly what

15  happened at my first sentencing, October 9th, 2009. Count 1

16  of my charge is a conspiracy to distribute drugs, at least

17  50 grams, and Count 2 is possessing with intent to distribute

18  at least 50 grams. However, on June 2nd, 2009, I was found

19  guilty of Count 1 as charged and Count 2 was broken down to

20  guilty of possessing less than 5 grams of cocaine. The judge

21  instructed the jury on five elements that the Government must

22  prove in order to find me guilty of Count 1, and there is no

23  possible way that it could have been proven. But my lawyers

24  didn't raise the issue of the elements not being proved and

25  allowed the prosecutors to confuse the jury.

1          The judge is trying to justify sentencing me to a

2    life sentence.  First I was told the life sentence comes from

3    one prior felony added with a juvenile case the prosecutor

4    wants to enhance.  At first I didn't know what to think, but

5    after speaking with people more familiar with the federal

6    rules and regulations, I found out that enhancement papers has

7    to be issued before trial and not during trial.  That's when

8    the prosecutor tried to file the enhancement papers in my

9    case.  After I raised the issue of the papers being late, my

10   lawyer tried to say I'm facing life because of the PSI --

11   because the PSI says I'm responsible for close to 1,200 grams

12   of cocaine, but those drugs are from controlled buys that I

13   didn't have anything to do with, nor did they involve me.  The

14   controlled buy took place on October 23rd, 2006, and resulted

15   in 2.17 grams being recovered.

16          On October 27th, 2006, another controlled buy took

17   place resulting in 4.61 grams recovered, also didn't have

18   anything to do with me.  On November 8th the law enforcement

19   officers tried to conduct a third controlled buy that went

20   wrong, but Sanders, the person involved in the conspiracy,

21   told the LEO that he would cooperate and let the police search

22   his house where he stated he has some more cocaine and more

23   money.  When the police searched his house, they found

24   4.90 grams of cocaine.  I had absolutely nothing to do with

25   any of those incidents, but for some reason the PSI took those

1   amounts and added the 57.33 grams that was found on July 7th

2   in an apartment that I was visiting, and then the police tried

3   to say it belonged to me because I admitted to 3 grams they

4   found for my personal use that belonged to me, but I had no

5   idea that they had found the 57.33 grams in the female's air

6   vent.  When the police came, there was six of us in that

7   apartment, and they chose three people including myself to

8   charge with the 57.33 grams.  Due to a lack of evidence and

9   the fact that it wasn't mine, a jury found me guilty of only

10   3 grams that I admitted to possessing, so how is it that the

11   PSI took the three controlled buys of Sanders and Sanders

12   alone with the amount -- which amounted to 11.68 grams and

13   added it to 57.33 grams and then took a statement from Sanders

14   after being arrested as being the truth when he said after

15   reaching an agreement to reduce his sentence if he includes me

16   in the conspiracy that he and I sold 2 ounces of cocaine every

17   two weeks.  If you add all these incidents that had no

18   connection to me and no factual evidence, you get the PSI --

19   you get the amount that the PSI is claiming I'm responsible

20   for, not to mention the federal guideline rule said that when

21   a person is guilty of at least 50, the drug amount cannot

22   exceed 150 grams, and the offense level was supposed to be at

23   a 30, not 34.  Now, isn't the PSI incorrect in having my

24   offense level at 34 and trying to hold me responsible for any

25   drugs, let alone 1,195.70 grams.  I need a new lawyer.  I need

1   my current lawyer, Mr. James Bryson Clements, not to be

2   allowed to handle any further situations concerning my case.

3   Thank you.

4                 THE COURT:  Ms. Zaehringer?

5                 MS. ZAEHRINGER:  Your Honor, we are asking for

6   the high end of the guideline range, 262 months with ten years

7   supervised release.  We base that on the defendant's extensive

8   criminal history.  He has seven drug-related convictions as

9   well as five other contacts with law enforcement officers

10  involving drugs.  The defendant has no strong history of

11  employment and also taking into the fact the office conduct

12  that we heard about during the trial.  Thank you.

13                THE COURT:  Anything else, Mr. Clements?

14                MR. CLEMENTS:  Nothing further, Your Honor.

15                THE COURT:  In fashioning an appropriate

16  sentence on Count 2, the Court has considered all of the

17  factors found in Title 18, United States Code Section 3553(a).

18  I have considered the nature and circumstances of the offense

19  and the history and characteristics of the defendant.  I have

20  considered the seriousness of the offense.  This one was

21  serious because of the amount of drugs and the length of time

22  that the conspiracy was going.  I've considered the question

23  of just punishment and note that Mr. McGee has for a young man

24  racked up quite a criminal history.  He's got an adult life

25  even though he's only 25 years old with quite a number of

1    convictions including multiple convictions for drugs and

2    drug-related activity.  The Court has considered the need for

3    adequate deterrence to criminal conduct as well as the need to

4    protect the public from further crimes of this defendant.

5    That's a particularly important factor as it relates to

6    Mr. McGee.  I've considered the sentencing options that are

7    available to the Court.  I've also considered the kinds of

8    sentences and the advisory sentencing range established by the

9    guidelines.  The guidelines are not mandatory, so the Court

10   looks to them as an important, though not in any way

11   controlling, factor to be considered.  I have considered also

12   the disparity between crack and powder cocaine as it relates

13   to the guidelines, at the high ends of the guidelines.

14   There's approximately 30 to 1 ratio between crack and powder.

15   Here if you take even half of the disparity weight by ignoring

16   half of the drugs that he's responsible for, you're still at

17   the same base offense level.  I've considered his lack of a

18   substantial work history and his complete lack of remorse

19   demonstrated again today in his testimony.  I've considered

20   and weighed heavily the need to avoid unwarranted sentencing

21   disparity among defendants with similar records who have been

22   found guilty of similar conduct.

23           I don't make the appointments for counsel on appeal.

24   The Court of Appeals does.  I will recommend to them that they

25   appoint a different attorney, not because you received

1  anything less than great advice here, but because it can't be

2  any fun to represent someone who simply won't listen.  After

3  considering the factors of 3553(a), I conclude that the

4  guideline sentencing system adequately addresses the

5  circumstances of this defendant and that the sentencing range

6  is reasonable.  Based on all the circumstances of this case,

7  the Court concludes that a sentence at the top of the range is

8  sufficient but not greater than necessary to address the

9  essential sentencing considerations.  I've already sentenced

10 Mr. McGee on Count 1, and that sentence will remain the same

11 in its entirety.

12      He's hereby sentenced to the custody of the Bureau

13 of Prisons for 262 months on Count 2.  That'll run concurrent

14 with the sentence on Count 1.  I have already imposed a

15 ten-year term of supervised release for this count.  All other

16 terms of supervised release as previously enunciated at the

17 prior sentencing will remain in force and effect including the

18 special assessment, the recommendation for where he's

19 incarcerated and all other terms and conditions.

20      You have the right to take an immediate appeal from

21 this judgment.  Any appeal has to be filed within ten days

22 from today.  I noticed that you had filed an appeal.

23 Mr. Clements timely filed an appeal.  I think it was dismissed

24 because we didn't have a final judgment here, dismissed by the

25 Court of Appeals, so you can file that appeal now, and it'll

1   be timely.  Do you have anything else, Mr. Clements?

2                    MR. CLEMENTS:  No, Your Honor.

3                    THE COURT:  Ms. Zaehringer?

4                    MS. ZAEHRINGER:  No, Your Honor.

5                    THE COURT:  We're in recess.  Thank you.

6                    (The hearing concluded at 12:28 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5                          CERTIFICATE OF REPORTER

6
          The undersigned, a Certified Shorthand Reporter of the
7    States of Iowa and Illinois, does hereby certify:

8
          That she acted as court reporter in the cause mentioned
9    on the title page of this transcript and transcribed the
     testimony offered and proceedings had on said hearing.
10
          That the foregoing pages of typewritten matter is a full,
11   true, and complete transcript had in this cause and that said
     transcript contains all of the testimony offered and
12   proceedings had at the times herein shown.

13
          DATED this _____ day of December, 2009.
14

15

16                        _____
                                 Heidi Krafka
17                        Certified Shorthand Reporter
                          Certified in Iowa and Illinois
18

19

20

21

22

23

24

25

**'06** [1] - 29:22
**'07** [1] - 29:22
**'09** [1] - 7:19
**1** [16] - 2:5, 2:7, 6:5, 6:7, 6:8, 6:22, 7:22, 36:4, 41:7, 41:23, 42:15, 42:19, 42:22, 46:14, 47:10, 47:14
**1,126.9** [1] - 40:18
**1,195.7** [1] - 40:20
**1,195.70** [1] - 44:25
**1,200** [1] - 43:11
**1.5** [1] - 35:1
**11.6** [1] - 39:18
**11.68** [2] - 40:12, 44:12
**11:14** [1] - 1:12
**12:28** [1] - 48:6
**12th** [1] - 2:6
**131** [2] - 1:13, 1:18
**13th** [1] - 38:19
**14** [1] - 19:7
**141** [1] - 16:15
**15** [1] - 19:8
**150** [2] - 40:22, 44:22
**1503** [1] - 1:20
**17th** [1] - 14:18
**18** [2] - 19:8, 45:17
**19** [1] - 19:8
**1938** [3] - 14:7, 14:8, 23:24
**2** [23] - 2:5, 2:11, 2:15, 2:16, 6:5, 6:10, 6:11, 6:20, 7:1, 7:13, 12:20, 21:8, 25:16, 26:3, 34:13, 35:15, 35:22, 40:17, 42:17, 42:19, 44:16, 45:16, 47:13
**2-point** [1] - 25:24
**2.17** [1] - 43:15
**20** [3] - 18:17, 36:24, 38:20
**2000** [1] - 11:8
**2006** [8] - 15:13, 15:14, 24:14, 27:16, 29:9, 34:4, 43:14, 43:16
**2007** [9] - 15:12, 23:12, 23:14, 29:2, 29:4, 38:20, 39:20, 40:11, 41:1
**2008** [3] - 2:6, 12:4, 38:20
**2009** [5] - 1:12, 14:18, 42:15, 42:18, 49:13
**21** [2] - 17:25, 18:2
**210** [1] - 35:23
**22** [1] - 19:20

**23** [1] - 21:4
**23rd** [1] - 43:14
**24** [1] - 4:10
**25** [2] - 21:14, 45:25
**25th** [1] - 23:18
**262** [3] - 35:23, 45:6, 47:13
**27th** [1] - 43:16
**28** [1] - 22:17
**29** [1] - 22:17
**2nd** [1] - 42:18
**3** [22] - 6:5, 6:17, 6:22, 7:1, 7:13, 9:8, 13:2, 16:23, 21:13, 22:1, 22:3, 25:20, 30:4, 32:7, 32:9, 33:16, 39:25, 40:10, 40:16, 41:9, 44:3, 44:10
**3-07-CR-634** [1] - 2:4
**3-point** [1] - 25:24
**30** [5] - 22:23, 39:13, 40:7, 44:23, 46:14
**34** [7] - 23:1, 34:24, 34:25, 35:21, 40:5, 44:23, 44:24
**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** [1] - 17:21
**35** [1] - 22:23
**355-8400** [1] - 1:25
**3553a** [1] - 47:3
**3553(a)** [1] - 45:17
**360** [1] - 2:11
**37** [1] - 23:11
**39** [1] - 24:13
**393** [1] - 1:24
**3:07-CR** [1] - 1:6
**4** [7] - 13:17, 13:23, 13:24, 13:25, 16:24, 35:22
**4.61** [1] - 43:17
**4.90** [1] - 43:24
**40-hour** [2] - 4:18, 4:19
**4A.1.2(c)(2** [1] - 33:22
**5** [10] - 1:12, 13:19, 13:23, 13:24, 13:25, 14:3, 38:14, 40:2, 42:20
**50** [10] - 2:8, 16:24, 39:15, 40:6, 40:22, 40:23, 42:17, 42:18, 44:21
**50.95** [1] - 23:1
**500** [2] - 35:1, 35:4
**51** [1] - 24:21
**52722** [1] - 1:24
**52801** [1] - 1:18
**52803** [1] - 1:21
**55** [1] - 25:13

**563** [1] - 1:25
**57.33** [12] - 21:6, 21:9, 21:13, 35:5, 39:19, 40:1, 40:3, 40:13, 44:1, 44:5, 44:8, 44:13
**6** [3] - 10:10, 10:20, 10:22
**61** [1] - 24:21
**634** [1] - 1:6
**69** [5] - 2:21, 2:22, 3:2, 26:6, 35:10
**6th** [1] - 36:23
**7** [1] - 39:20
**70** [2] - 3:2, 3:4
**71** [1] - 26:24
**73** [12] - 2:22, 3:7, 3:17, 12:13, 13:2, 13:13, 15:10, 27:15, 34:2, 35:10, 35:11
**79** [2] - 15:10, 34:7
**7th** [3] - 40:11, 41:1, 44:1
**8** [3] - 17:24, 18:1, 18:17
**8th** [2] - 15:14, 43:18
**9-22** [1] - 7:19
**9th** [4] - 37:5, 40:8, 42:2, 42:15
**a.m** [1] - 1:12
**above-entitled** [1] - 1:12
**absolutely** [1] - 43:24
**acceptance** [8] - 25:14, 25:17, 32:6, 32:8, 32:13, 33:14, 33:19, 35:19
**access** [2] - 13:3, 38:9
**accomplice** [1] - 41:4
**according** [4] - 21:21, 25:7, 27:17, 40:20
**accordingly** [1] - 35:19
**accountable** [1] - 19:13
**act** [1] - 41:4
**acted** [1] - 49:8
**active** [1] - 5:3
**activities** [2] - 18:19, 18:25
**activity** [2] - 27:10, 46:2
**add** [1] - 44:17
**added** [6] - 39:18, 40:18, 43:3, 44:1, 44:13

**additional** [5] - 3:11, 3:15, 32:21, 32:22, 35:15
**address** [12] - 14:3, 14:6, 14:10, 14:12, 18:14, 36:14, 36:20, 37:8, 37:13, 40:8, 41:25, 47:8
**addresses** [1] - 47:4
**adequate** [2] - 36:3, 46:3
**adequately** [1] - 47:4
**adjustment** [2] - 25:5, 32:2
**admit** [4] - 6:21, 10:19, 13:22, 32:13
**admitted** [11] - 21:20, 21:22, 25:19, 25:20, 25:23, 26:7, 26:25, 39:25, 40:10, 44:3, 44:10
**admitting** [1] - 33:16
**adult** [1] - 45:24
**advanced** [1] - 4:19
**advice** [1] - 47:1
**advisory** [2] - 2:19, 46:8
**aggravating** [3] - 31:21, 32:4, 33:3
**ago** [1] - 37:4
**agreement** [1] - 44:15
**ahead** [2] - 16:7, 28:9
**AIFIS** [1] - 10:4
**air** [1] - 44:5
**akin** [1] - 35:11
**alias** [3] - 17:2, 17:15, 17:16
**aliases** [2] - 10:15, 17:1
**allegation** [1] - 26:24
**allegations** [2] - 22:18, 23:7
**alleged** [3] - 24:25, 26:22, 36:24
**allotted** [1] - 28:13
**allow** [2] - 16:16, 42:4
**allowed** [4] - 37:12, 42:14, 42:25, 45:2
**allowing** [1] - 39:7
**alone** [3] - 34:25, 44:12, 44:25
**Amendment** [1] - 38:14
**AMERICA** [1] - 1:4
**America** [2] - 1:19, 2:3
**amount** [19] - 21:4,

21:6, 21:7, 23:2, 23:4, 25:16, 26:2, 34:14, 34:15, 34:18, 34:20, 37:12, 40:14, 40:15, 42:4, 44:12, 44:19, 44:21, 45:21
**amounted** [1] - 44:12
**amounts** [8] - 18:20, 18:24, 19:6, 19:8, 40:15, 40:19, 41:7, 44:1
**analysis** [1] - 7:17
**analyze** [1] - 13:9
**analyzed** [1] - 4:22
**Andrell** [7] - 17:3, 22:24, 26:9, 26:17, 26:19, 40:24, 41:15
**Angelo** [4] - 24:15, 24:19, 30:12, 31:16
**anyplace** [1] - 36:17
**anyway** [1] - 3:11
**apartment** [8] - 18:9, 19:22, 19:24, 22:12, 39:23, 39:25, 44:2, 44:7
**Apartments** [2] - 24:12, 33:9
**appeal** [12] - 36:6, 36:8, 36:10, 41:22, 41:24, 46:23, 47:20, 47:21, 47:22, 47:23, 47:25
**Appeals** [2] - 46:24, 47:25
**appear** [2] - 26:15, 41:4
**APPEARANCES** [1] - 1:16
**appearing** [2] - 1:18, 1:21
**appoint** [3] - 36:6, 36:9, 46:25
**appointments** [1] - 46:23
**approach** [1] - 5:25
**appropriate** [2] - 35:3, 45:15
**appropriately** [4] - 34:23, 35:13, 35:15, 35:20
**argue** [1] - 36:2
**argument** [3] - 31:23, 31:24, 32:23
**arrest** [8] - 10:5, 10:17, 12:16, 14:2, 22:23, 24:2, 26:20, 27:25
**arrested** [12] - 5:21, 18:1, 18:3, 18:7, 23:17, 24:6, 26:8,

26:9, 26:15, 27:18, 28:1, 44:14
**arrests** [2] - 10:14, 10:15
**assessment** [2] - 31:20, 47:18
**assessments** [1] - 24:22
**Assistant** [1] - 1:17
**associate** [1] - 27:5
**associated** [1] - 27:4
**Association** [1] - 5:1
**attached** [1] - 38:23
**attempt** [1] - 42:4
**attempts** [1] - 37:18
**attention** [7] - 16:21, 34:12, 37:10, 37:14, 38:25, 39:6, 41:19
**attorney** [4] - 9:17, 12:9, 41:12, 46:25
**Attorney** [2] - 1:17, 1:20
**Attorney's** [1] - 1:17
**attributable** [1] - 2:20
**attribute** [3] - 35:5, 40:3, 40:4
**attributed** [2] - 19:9, 23:5
**attributing** [1] - 23:2
**audiotape** [3] - 15:17, 30:22, 31:14
**August** [2] - 14:18, 24:14
**Automated** [1] - 9:11
**automatically** [1] - 37:17
**available** [1] - 46:7
**Avenue** [2] - 14:7, 14:8
**avoid** [1] - 46:20
**awarded** [2] - 2:23, 33:24
**awful** [1] - 28:6
**B-U-M-A-N-N** [1] - 8:23
**backed** [1] - 34:15
**background** [1] - 4:16
**bars** [1] - 38:15
**base** [6] - 3:13, 23:1, 23:13, 34:24, 45:7, 46:17
**based** [10] - 21:7, 26:1, 33:6, 33:12, 33:24, 34:2, 34:13, 34:18, 35:4, 47:6
**basic** [2] - 4:18, 5:14
**basketball** [1] - 20:17

**Bates** [4] - 17:3, 26:9, 26:17, 26:19
**bears** [1] - 32:24
**began** [1] - 23:13
**beginning** [1] - 18:17
**behalf** [2] - 1:21, 38:7
**behavior** [2] - 38:7, 42:5
**behind** [4] - 5:16, 19:22, 19:25, 20:7
**belong** [2] - 4:25, 5:1
**belonged** [3] - 27:1, 44:3, 44:4
**beside** [1] - 19:23
**Bettendorf** [1] - 1:24
**between** [4] - 35:1, 35:23, 46:12, 46:14
**beyond** [2] - 19:11, 35:7
**bills** [1] - 18:11
**birth** [1] - 12:15
**blamed** [1] - 40:14
**blows** [1] - 28:1
**bogus** [3] - 40:15, 40:18, 41:7
**book** [6] - 25:6, 28:19, 37:15, 40:5, 40:21
**booked** [1] - 9:6
**Booking** [1] - 9:11
**books** [2] - 38:10, 42:12
**bottom** [1] - 36:2
**bought** [1] - 25:22
**Box** [1] - 1:24
**Brady** [1] - 1:20
**bring** [3] - 15:18, 16:21, 38:16
**Broadway** [1] - 33:9
**broken** [2] - 41:10, 42:19
**brought** [3] - 7:3, 30:19, 37:14
**BRYSON** [1] - 1:20
**Bryson** [2] - 37:16, 45:1
**Building** [2] - 1:13, 1:18
**building** [5] - 19:23, 19:24, 19:25, 20:5, 20:8
**Bumann** [2] - 8:13, 8:23
**BUMANN** [1] - 8:14
**burden** [1] - 32:24
**Bureau** [1] - 47:12
**bus** [1] - 30:21
**business** [2] - 28:12, 35:11

**Busted** [1] - 25:7
**buy** [6] - 15:16, 39:21, 41:2, 43:14, 43:16, 43:19
**buys** [6] - 39:16, 39:18, 40:13, 40:25, 43:12, 44:11
**BY** [13] - 4:3, 6:3, 6:25, 8:3, 8:20, 9:21, 11:2, 11:22, 14:1, 14:24, 16:20, 28:10, 29:16
**cab** [1] - 20:18
**calculation** [1] - 2:13
**cannot** [1] - 44:21
**capital** [1] - 4:6
**car** [1] - 20:23
**card** [1] - 5:19
**cards** [1] - 13:6
**career** [1] - 4:23
**case** [27] - 2:15, 5:22, 10:8, 16:13, 19:13, 24:24, 26:6, 27:16, 33:2, 33:4, 33:18, 35:3, 36:8, 36:21, 37:4, 37:6, 37:17, 37:19, 38:4, 38:18, 38:20, 38:25, 39:6, 43:3, 43:9, 45:2, 47:6
**Case** [1] - 2:4
**cases** [2] - 3:3, 28:21
**caught** [2] - 30:21, 41:4
**cell** [2] - 29:3, 36:16
**certain** [1] - 41:4
**certainly** [2] - 34:13, 35:17
**CERTIFICATE** [1] - 49:5
**Certified** [3] - 49:6, 49:17, 49:17
**certify** [1] - 49:7
**change** [3] - 30:8, 34:19, 38:10
**characteristics** [1] - 45:19
**characterization** [1] - 21:21
**characterized** [1] - 19:24
**charge** [2] - 42:16, 44:8
**charged** [6] - 19:14, 19:15, 19:16, 29:21, 41:8, 42:19
**charges** [2] - 41:7, 41:23
**chemicals** [1] - 5:17
**Chicago** [14] - 12:14,

12:17, 14:2, 14:8, 22:6, 22:9, 23:24, 29:23, 30:12, 30:14, 31:7, 33:8, 33:11, 36:17
**choose** [2] - 7:8, 7:10, 7:11
**chose** [2] - 6:15, 44:7
**CHRISTOPHER** [2] - 1:7, 16:2
**Christopher** [6] - 2:3, 6:12, 6:18, 12:7, 17:10, 35:9
**Chrustopher** [3] - 17:7, 17:12
**circumstance** [1] - 36:3
**circumstances** [3] - 45:18, 47:5, 47:6
**cited** [1] - 27:18
**City** [6] - 4:8, 15:21, 23:17, 23:18, 30:17, 34:4
**claim** [11] - 17:6, 17:15, 17:18, 17:20, 19:23, 22:25, 25:1, 27:18, 31:21, 32:6, 33:2
**claimed** [3] - 25:8, 29:1, 32:7
**claiming** [5] - 3:2, 18:15, 18:21, 26:25, 44:19
**claims** [4] - 17:2, 21:15, 24:13, 33:21
**clarity** [1] - 16:14
**classes** [1] - 4:20
**clear** [4] - 33:6, 34:1, 34:3, 38:6
**clearly** [1] - 35:4
**CLEMENTS** [25] - 1:20, 3:1, 3:6, 6:24, 8:1, 8:3, 8:8, 10:21, 11:2, 11:11, 13:24, 14:24, 15:5, 15:24, 16:8, 16:13, 16:20, 28:10, 29:12, 32:18, 32:22, 34:10, 36:1, 45:14, 48:2
**Clements** [16] - 2:17, 2:25, 7:25, 10:24, 14:22, 15:22, 34:9, 35:24, 37:16, 38:25, 39:6, 39:11, 45:1, 45:13, 47:23, 48:1
**Clements'** [1] - 39:3
**clerk** [3] - 13:3, 13:15, 13:18
**CLERK** [4] - 4:1,

8:18, 11:20, 16:6
**client** [3] - 3:2, 34:11, 34:13, 34:16, 39:5
**clients** [1] - 39:3
**close** [2] - 39:13, 43:11
**clothes** [1] - 30:8
**cocaine** [26] - 2:9, 15:17, 19:16, 21:5, 21:6, 21:7, 22:4, 22:6, 22:9, 23:1, 23:7, 23:8, 23:13, 26:2, 34:21, 34:25, 35:12, 40:2, 41:9, 42:20, 43:12, 43:22, 43:24, 44:16, 46:12
**Code** [1] - 45:17
**code** [1] - 10:17
**codefendant** [3] - 18:19, 39:2, 39:4
**Codefendant** [1] - 39:1
**comment** [1] - 38:2
**commit** [1] - 34:2
**committed** [1] - 34:5
**committee** [1] - 5:4
**committing** [1] - 28:24
**communicate** [1] - 39:1
**compare** [3] - 6:15, 6:20, 7:11
**comparing** [1] - 8:4
**comparisons** [1] - 6:9
**complain** [1] - 42:6
**complaints** [1] - 38:24
**complete** [3] - 41:11, 46:18, 49:11
**complicate** [1] - 41:21
**comply** [1] - 42:3
**concerning** [3] - 11:3, 38:4, 45:2
**conclude** [1] - 47:3
**concluded** [2] - 24:24, 48:6
**concludes** [1] - 47:7
**concurrent** [1] - 47:13
**conditions** [1] - 47:19
**conduct** [6] - 33:16, 33:22, 43:19, 45:11, 46:3, 46:22
**conducted** [1] - 39:16
**conferences** [2] - 5:5

**confine** [1] - 16:9

**confirming** [1] - 41:23

**confronted** [1] - 15:15

**confuse** [1] - 42:25

**confusing** [1] - 2:9

**congress** [1] - 34:19

**connect** [1] - 37:25

**connection** [1] - 44:18

**considerations** [1] - 47:9

**considered** [11] - 45:16, 45:18, 45:20, 45:22, 46:2, 46:6, 46:7, 46:11, 46:17, 46:19

**considering** [3] - 34:24, 41:19, 47:3

**consistent** [1] - 20:12

**conspiracy** [23] - 2:9, 18:23, 21:23, 22:2, 22:21, 25:10, 29:21, 32:10, 32:11, 32:14, 33:17, 34:5, 35:16, 36:24, 39:14, 39:15, 40:11, 41:3, 42:16, 43:20, 44:16, 45:22

**constitutional** [3] - 38:10, 38:13, 38:14

**contacted** [3] - 5:22, 12:14, 12:18

**contacts** [1] - 45:9

**contained** [1] - 13:1

**contains** [1] - 49:11

**contests** [1] - 2:21

**context** [2] - 17:4, 22:16

**controlled** [11] - 39:16, 39:18, 39:21, 40:13, 40:25, 41:2, 43:12, 43:14, 43:16, 43:19, 44:11

**controlling** [1] - 46:11

**conversation** [1] - 15:19

**convicted** [1] - 35:9

**conviction** [7] - 2:22, 2:23, 3:17, 12:10, 12:13, 15:10, 35:11

**convictions** [6] - 2:21, 10:14, 10:15, 45:8, 46:1

**Cook** [2] - 11:8, 27:16

**cooperate** [1] - 43:21

**cooperating** [1] - 41:5

**copies** [2] - 38:4, 38:5

**corner** [1] - 20:4

**correct** [13] - 5:23, 7:2, 7:20, 7:22, 8:6, 8:7, 11:5, 11:6, 12:10, 12:11, 12:25, 25:2, 28:16

**corrected** [1] - 28:18

**counsel** [4] - 36:6, 36:7, 36:9, 46:23

**counseling** [1] - 42:6

**counselor** [1] - 38:12

**Count** [21] - 2:7, 2:11, 2:15, 2:16, 21:8, 25:16, 26:3, 34:13, 35:22, 36:4, 41:7, 41:23, 42:15, 42:17, 42:19, 42:22, 45:16, 47:10, 47:13, 47:14

**count** [2] - 35:25, 47:15

**Counts** [1] - 2:5

**County** [7] - 5:9, 5:10, 11:9, 27:16, 37:21

**county** [1] - 5:10

**couple** [1] - 37:7

**course** [1] - 5:10

**COURT** [36] - 1:1, 2:2, 3:4, 3:8, 3:11, 3:16, 3:19, 3:21, 6:1, 6:23, 7:25, 8:11, 10:22, 10:24, 11:13, 13:25, 14:22, 15:6, 15:22, 16:1, 16:7, 16:11, 16:18, 28:6, 28:9, 29:14, 32:20, 32:24, 34:9, 34:22, 36:11, 45:4, 45:13, 45:15, 48:3, 48:5

**court** [5] - 5:8, 13:15, 13:18, 38:18, 49:8

**Court** [27] - 1:14, 2:5, 2:10, 2:13, 2:15, 15:9, 15:13, 16:17, 19:10, 21:8, 25:18, 34:17, 34:19, 35:8, 36:5, 36:9, 37:8, 41:18, 45:16, 46:2, 46:7, 46:9, 46:24, 47:7, 47:25

**courtroom** [1] - 9:16

**courts** [1] - 5:7

**cover** [1] - 12:23

**crack** [9] - 2:8, 15:16, 31:3, 34:18, 34:21, 34:25, 35:12,

46:12, 46:14

**credible** [2] - 35:2, 35:4

**crime** [3] - 4:14, 34:2, 35:10

**crimes** [2] - 2:7, 46:4

**criminal** [13] - 1:6, 2:24, 15:8, 16:10, 26:5, 26:21, 28:13, 33:20, 35:13, 35:21, 45:8, 45:24, 46:3

**Criminal** [1] - 2:4

**criminalist** [1] - 4:12

**Criven** [1] - 24:11

**cross** [1] - 10:4

**CROSS** [4] - 8:2, 11:1, 14:23, 29:15

**CROSS-EXAMINATION** [4] - 8:2, 11:1, 14:23, 29:15

**cross-matched** [1] - 10:4

**CSR** [1] - 1:23

**current** [5] - 28:24, 34:18, 38:11, 41:21, 45:1

**custody** [2] - 11:5, 47:12

**data** [1] - 16:25

**date** [6] - 6:19, 7:16, 12:15, 12:16, 36:25, 42:14

**DATED** [1] - 49:13

**dated** [1] - 6:14

**DAVENPORT** [1] - 1:2

**Davenport** [7] - 1:12, 1:13, 1:17, 1:18, 1:21, 9:1, 9:4

**days** [1] - 47:21

**DE** [1] - 4:6

**deal** [1] - 20:1

**dealing** [1] - 38:15

**December** [2] - 38:19, 49:13

**deeply** [1] - 35:16

**Defendant** [2] - 1:8, 1:21

**defendant** [23] - 2:20, 2:21, 9:20, 14:3, 14:9, 15:9, 15:11, 15:13, 15:16, 15:18, 15:20, 15:24, 33:7, 33:15, 33:20, 34:1, 34:4, 35:6, 35:16, 45:10, 45:19, 46:4, 47:5

**DEFENDANT** [2] - 28:8, 36:13

**defendant's** [3] - 12:15, 14:20, 45:7

**defendants** [2] - 33:2, 46:21

**defense** [2] - 12:9, 34:8

**deliver** [1] - 20:7

**delivered** [1] - 8:5

**demonstrated** [1] - 46:19

**denied** [4] - 33:15, 38:4, 38:5, 38:13

**deny** [1] - 39:25

**denying** [1] - 41:2

**Department** [3] - 4:8, 12:14, 13:9

**department** [1] - 4:12

**deputy** [1] - 8:23

**details** [2] - 18:18, 21:23

**detained** [1] - 42:11

**determine** [1] - 2:19

**determined** [2] - 34:23, 35:20

**deterrence** [1] - 46:3

**DeVine** [6] - 3:20, 3:22, 4:6, 13:8, 13:11, 33:25

**different** [2] - 17:18, 46:25

**DIRECT** [4] - 4:2, 8:19, 11:21, 16:19

**directly** [2] - 10:2, 11:7

**discovery** [1] - 38:5

**discuss** [1] - 22:23

**discussed** [1] - 19:21

**discussion** [2] - 20:25, 25:13

**discussions** [1] - 26:22

**dismissed** [2] - 47:23, 47:24

**disparity** [3] - 46:12, 46:15, 46:21

**disputes** [2] - 2:20, 2:24

**disregarded** [1] - 39:7

**distribute** [2] - 42:16, 42:17

**distribution** [1] - 35:12

**DISTRICT** [2] - 1:1, 1:1

**District** [5] - 1:13, 1:14, 1:17, 14:17

**Division** [2] - 5:2, 5:3

**DIVISION** [1] - 1:2

**division** [1] - 12:19

**docket** [2] - 13:16, 13:18

**Document** [1] - 16:15

**documents** [4] - 13:5, 13:10, 13:14, 15:20

**done** [2] - 11:4, 42:6

**doubt** [1] - 35:8

**down** [3] - 36:19, 37:10, 42:19

**draw** [1] - 34:12

**drawer** [1] - 30:10

**driving** [3] - 20:17, 20:18, 20:19

**dropped** [2] - 30:14, 38:20

**drove** [2] - 30:12, 30:14

**drug** [19] - 2:7, 2:20, 3:8, 18:20, 18:24, 20:1, 21:4, 21:22, 22:21, 23:2, 34:15, 34:20, 40:15, 41:3, 41:7, 44:21, 45:8, 46:2

**drug-related** [2] - 45:8, 46:2

**drugs** [21] - 19:2, 19:12, 20:7, 20:12, 20:25, 21:2, 21:25, 29:7, 30:2, 33:8, 34:14, 36:17, 39:23, 40:9, 42:16, 43:12, 44:25, 45:10, 45:21, 46:1, 46:16

**due** [2] - 13:7, 44:8

**duly** [4] - 3:23, 8:15, 11:17, 16:3

**during** [18] - 3:14, 15:12, 17:11, 18:22, 21:20, 29:19, 29:21, 30:22, 30:23, 31:14, 33:10, 34:5, 36:7, 36:18, 36:21, 39:9, 43:7, 45:12

**duties** [1] - 9:5

**East** [2] - 1:13, 1:18

**editor** [1] - 5:6

**education** [1] - 4:17

**Edwards** [2] - 22:13, 30:13

**Edwards'** [1] - 22:18

**effect** [1] - 47:17

**either** [2] - 42:2, 42:8

**elements** [2] - 42:21, 42:24

**Emerald** [1] - 33:9

**employed** [7] - 4:7, 4:9, 8:24, 8:25, 9:2, 12:1, 12:3
**employment** [2] - 17:22, 45:11
**end** [7] - 23:16, 23:18, 24:2, 24:5, 29:1, 42:13, 45:6
**ended** [1] - 36:23
**ends** [1] - 46:13
**enforcement** [3] - 19:22, 43:18, 45:9
**enhance** [1] - 43:4
**enhancement** [4] - 39:8, 39:9, 43:6, 43:8
**entered** [1] - 9:22
**entirety** [1] - 47:11
**entitled** [5] - 1:12, 25:4, 25:7, 35:17, 35:18
**enunciated** [1] - 47:16
**equivalence** [1] - 28:15
**essential** [1] - 47:9
**established** [1] - 46:8
**estimate** [2] - 35:2, 35:3
**evidence** [18] - 3:9, 3:11, 3:14, 3:16, 15:8, 15:22, 16:12, 26:7, 32:21, 32:22, 33:12, 35:6, 37:22, 37:24, 38:2, 41:19, 44:8, 44:18
**exact** [1] - 36:25
**exactly** [3] - 26:4, 42:14
**EXAMINATION** [8] - 4:2, 8:2, 8:19, 11:1, 11:21, 14:23, 16:19, 29:15
**examined** [5] - 3:25, 6:13, 8:17, 11:19, 16:5
**examiner** [1] - 4:15
**exceed** [1] - 44:22
**except** [1] - 33:16
**excuse** [1] - 24:4
**excused** [1] - 8:11
**Exhibit** [16] - 6:7, 6:8, 6:10, 6:11, 6:17, 6:20, 7:22, 9:8, 10:10, 10:20, 12:20, 13:2, 13:17, 13:19, 13:23, 14:3
**Exhibits** [4] - 6:5, 6:22, 7:1, 7:13
**exhibits** [1] - 7:6

**exist** [2] - 40:15, 41:8
**expected** [1] - 41:17
**explain** [3] - 19:10, 21:8, 25:17
**extensive** [1] - 45:7
**facing** [5] - 36:4, 37:19, 41:13, 43:10
**fact** [18] - 6:14, 19:11, 20:1, 20:13, 21:16, 21:22, 23:8, 28:14, 33:4, 36:14, 36:20, 37:13, 38:16, 38:24, 40:8, 41:11, 44:9, 45:11
**factor** [2] - 46:5, 6:11
**factors** [2] - 45:17, 47:3
**factual** [3] - 2:19, 41:19, 44:18
**factually** [1] - 2:25
**failed** [1] - 42:2
**failure** [1] - 42:3
**familiar** [2] - 32:5, 43:5
**far** [4] - 15:8, 25:19, 33:14, 42:13
**fashioning** [1] - 45:15
**father** [1] - 17:14
**Fats** [1] - 31:8
**FAX** [1] - 12:23
**faxed** [1] - 12:19
**FAXed** [1] - 12:21
**FBI** [6] - 4:18, 4:19, 10:7, 10:13, 10:18
**February** [7] - 12:4, 23:12, 23:14, 23:15, 23:21, 23:25, 41:1
**federal** [11] - 5:8, 37:2, 37:14, 38:9, 38:17, 39:7, 40:5, 40:21, 42:12, 43:5, 44:20
**Federal** [2] - 1:13, 1:18
**Feds** [1] - 25:7
**felony** [2] - 7:7, 43:3
**female's** [2] - 39:19, 44:5
**few** [1] - 42:10
**file** [4] - 15:1, 41:22, 43:8, 47:25
**filed** [7] - 36:7, 38:12, 39:9, 39:10, 47:21, 47:22, 47:23
**filing** [2] - 37:20, 42:11
**final** [2] - 3:5, 47:24
**finally** [1] - 40:25

**findings** [1] - 6:8
**finger** [2] - 6:15, 7:10
**fingerprint** [6] - 4:15, 5:19, 9:5, 10:16, 12:18, 13:6
**fingerprinting** [2] - 4:16, 10:2
**fingerprints** [20] - 4:22, 6:13, 8:4, 8:6, 9:12, 9:13, 9:14, 9:15, 9:22, 10:5, 10:13, 11:3, 11:8, 12:12, 12:16, 12:21, 13:1, 14:25, 15:3, 26:7
**fingers** [2] - 5:15, 7:9
**first** [20] - 3:23, 8:6, 8:15, 11:17, 16:3, 16:9, 16:23, 21:11, 26:25, 32:25, 35:23, 37:3, 37:5, 37:16, 39:10, 40:18, 42:1, 42:15, 43:2, 43:4
**five** [4] - 9:3, 36:7, 42:21, 45:9
**flat** [1] - 41:11
**Flats** [2] - 31:8, 33:11
**Floor** [1] - 1:18
**follow** [3] - 16:16, 40:22, 41:20
**follows** [4] - 3:25, 8:17, 11:19, 16:5
**FOR** [1] - 1:1
**force** [1] - 47:17
**foregoing** [1] - 49:10
**forensic** [1] - 4:13
**forgive** [1] - 37:11
**forgot** [1] - 20:16
**formally** [2] - 27:4, 27:5
**forms** [1] - 5:17
**forth** [1] - 35:10
**forward** [2] - 3:21, 16:1
**Fourth** [2] - 1:13, 1:18
**friend** [1] - 23:17
**friends** [1] - 27:7
**full** [2] - 30:9, 49:10
**fun** [1] - 47:2
**function** [1] - 4:14
**gang** [5] - 27:2, 27:4, 27:7, 27:9, 27:12
**gangs** [1] - 26:23
**garner** [1] - 28:12
**gates** [1] - 33:4
**generally** [1] - 5:12
**girl** [1] - 24:10
**girlfriend** [1] - 29:25
**girlfriend's** [1] - 30:2

**given** [7] - 7:1, 11:3, 17:19, 35:13, 35:15, 37:11, 41:24
**Government** [11] - 2:17, 6:20, 16:16, 17:20, 28:25, 29:2, 32:24, 36:14, 37:22, 37:25, 42:21
**Government's** [13] - 6:4, 6:17, 6:21, 7:12, 7:21, 9:8, 10:10, 10:19, 12:20, 13:1, 13:17, 13:22, 14:3
**gram** [1] - 40:14
**grams** [50] - 2:8, 21:6, 21:9, 21:13, 22:1, 22:3, 22:4, 23:1, 25:20, 30:4, 32:7, 32:9, 33:16, 35:1, 35:4, 35:5, 39:15, 39:18, 39:19, 39:25, 40:1, 40:2, 40:3, 40:4, 40:6, 40:10, 40:12, 40:13, 40:16, 40:18, 40:20, 40:23, 41:9, 42:17, 42:18, 42:20, 43:11, 43:15, 43:17, 43:24, 44:1, 44:3, 44:5, 44:8, 44:10, 44:12, 44:13, 44:22, 44:25
**Grand** [1] - 38:5
**grant** [1] - 34:20
**great** [1] - 47:1
**greater** [2] - 25:1, 47:8
**grounds** [1] - 27:23
**group** [1] - 30:20
**groups** [1] - 4:21
**grow** [1] - 31:18
**guess** [2] - 28:18, 30:6
**guideline** [12] - 2:10, 2:12, 2:13, 25:6, 28:21, 36:2, 37:14, 40:5, 40:21, 44:20, 45:6, 47:4
**guidelines** [5] - 33:22, 46:9, 46:13
**Guidelines** [1] - 35:21
**guilty** [14] - 21:12, 32:15, 33:18, 39:15, 40:1, 40:6, 40:23, 41:12, 42:19, 42:20, 42:22, 44:9, 44:21, 46:22
**guy** [1] - 20:16
**guys** [1] - 20:23
**gym** [2] - 20:22,

20:24
**half** [2] - 46:15, 46:19
**handle** [1] - 45:2
**handling** [2] - 36:8, 38:18
**happy** [1] - 38:11
**headed** [1] - 16:17
**hear** [2] - 31:14, 35:23
**heard** [4] - 3:13, 39:24, 42:9, 45:12
**HEARING** [1] - 1:7
**hearing** [3] - 1:12, 48:6, 49:9
**heavily** [1] - 46:20
**Heidi** [2] - 1:23, 49:16
**held** [1] - 19:12
**help** [3] - 41:6, 41:14, 41:18
**hereby** [2] - 47:12, 49:7
**herein** [1] - 49:12
**hid** [1] - 30:5
**high** [3] - 42:13, 45:6, 46:13
**hisself** [2] - 38:7, 41:14
**history** [14] - 2:24, 15:8, 16:10, 26:5, 26:21, 28:13, 33:20, 35:13, 35:22, 45:8, 45:10, 45:19, 45:24, 46:18
**hold** [3] - 14:16, 40:8, 44:24
**Honor** [19] - 3:10, 3:12, 3:13, 3:18, 6:24, 15:7, 15:25, 16:8, 29:13, 32:19, 32:23, 33:1, 34:10, 36:1, 36:10, 45:5, 45:14, 48:2, 48:4
**Honorable** [1] - 1:13
**hour** [1] - 10:3
**house** [8] - 21:12, 30:2, 30:7, 30:15, 39:19, 40:14, 43:22, 43:23
**Humphries** [1] - 30:13
**IAFIS** [1] - 10:2
**IAI** [1] - 5:2
**ID** [1] - 7:15
**idea** [2] - 21:11, 44:5
**identification** [1] - 10:4
**Identification** [1] - 5:2

**identified** [1] - 9:20
**identifiers** [1] - 10:16
**identifying** [1] - 16:25
**ignored** [3] - 37:15, 38:14, 38:16
**ignoring** [1] - 46:15
**Illinois** [10] - 4:20, 5:2, 5:3, 14:8, 14:17, 23:24, 27:16, 27:22, 49:7, 49:17
**immediate** [1] - 47:20
**important** [2] - 46:5, 46:10
**imposed** [4] - 2:10, 35:25, 36:12, 47:14
**impression** [5] - 5:15, 5:18, 5:20, 6:11, 6:18
**imprisonment** [1] - 35:23
**IN** [1] - 1:1
**incarcerated** [3] - 42:9, 42:11, 47:19
**incident** [1] - 27:17
**incidents** [3] - 18:22, 43:25, 44:17
**include** [2] - 19:17, 22:25
**included** [2] - 18:20, 21:9
**includes** [3] - 21:5, 21:6, 44:15
**including** [3] - 44:7, 46:1, 47:17
**inclusion** [2] - 19:5, 19:10
**incorrect** [1] - 44:23
**indicate** [1] - 23:21
**indicated** [10] - 7:5, 7:15, 12:16, 24:5, 24:23, 25:14, 27:15, 28:11, 29:17, 34:16
**indicates** [5] - 15:11, 18:2, 21:14, 26:8, 33:18
**indicating** [1] - 20:11
**indictment** [4] - 2:6, 19:17, 38:17, 38:19
**individual** [3] - 9:15, 31:11, 34:2
**individuals** [1] - 20:11
**ineffective** [1] - 42:6
**informants** [1] - 39:17
**information** [2] - 11:7, 38:22
**informed** [1] - 15:9

**initialed** [1] - 6:14
**initials** [2] - 6:19, 7:15
**ink** [4] - 5:13, 5:18, 6:11, 6:18
**inmate** [1] - 42:9
**inmates** [2] - 9:5, 38:9
**innocence** [2] - 24:23, 38:3
**instructed** [1] - 42:21
**intend** [1] - 3:9
**intent** [1] - 42:17
**interested** [1] - 20:24
**Internation** [1] - 5:1
**interview** [4] - 21:15, 21:17, 21:20, 30:23
**interviewed** [1] - 21:14
**interviewing** [1] - 14:9
**investigator** [1] - 4:14
**involve** [3] - 32:10, 40:12, 43:13
**involved** [14] - 2:9, 15:2, 18:24, 22:21, 23:7, 25:10, 26:23, 27:12, 29:7, 35:16, 39:14, 39:15, 40:25, 43:20
**involvement** [1] - 41:3
**involving** [3] - 39:13, 39:17, 45:10
**IOWA** [1] - 1:1
**Iowa** [28] - 1:13, 1:14, 1:17, 1:18, 1:21, 1:24, 9:1, 15:11, 15:21, 23:12, 23:17, 23:18, 23:25, 24:3, 24:6, 24:7, 24:14, 24:15, 24:17, 24:18, 29:1, 29:9, 29:17, 30:17, 34:4, 36:15, 49:7, 49:17
**Island** [4] - 4:8, 5:9, 5:11, 13:8
**issue** [4] - 3:8, 28:23, 42:24, 43:9
**issued** [1] - 10:6, 38:17, 38:19, 42:4, 43:7
**issues** [4] - 32:25, 34:7, 37:9, 41:25
**issuing** [1] - 42:13
**it'll** [2] - 10:18, 47:25
**item** [1] - 26:14
**items** [2] - 30:7,

34:12
**JABS** [4] - 9:10, 9:23, 9:24, 10:1
**James** [8] - 2:4, 2:17, 6:18, 12:7, 17:10, 17:15, 37:16, 45:1
**JAMES** [2] - 1:7, 1:20
**January** [3] - 15:12, 29:1, 29:4
**Jarvey** [1] - 1:13
**job** [1] - 20:18
**jobs** [1] - 4:13
**John** [1] - 1:13
**Joint** [1] - 9:11
**judge** [5] - 42:10, 42:12, 42:20, 43:1
**Judge** [1] - 1:13
**judgment** [4] - 37:4, 37:6, 47:21, 47:24
**Julia** [1] - 22:24
**July** [3] - 39:20, 40:11, 44:1
**June** [2] - 27:16, 42:18
**jurisdictions** [1] - 38:15
**jury** [13] - 2:8, 21:12, 22:15, 26:1, 34:14, 35:7, 39:14, 39:24, 40:1, 40:2, 42:21, 42:25, 44:9
**Jury** [1] - 38:5
**jury's** [1] - 21:7
**justify** [1] - 43:1
**juvenile** [3] - 2:23, 26:6, 43:3
**Katie** [4] - 5:22, 7:2, 11:14, 11:25
**KATIE** [1] - 11:16
**keeps** [1] - 36:14
**Kiki** [1] - 24:10
**kilograms** [1] - 35:1
**kinds** [1] - 46:7
**Kishandra** [1] - 24:11
**knowledge** [6] - 8:5, 23:4, 27:21, 39:9, 39:22, 40:1
**known** [1] - 5:19
**knows** [1] - 40:7
**Knox** [1] - 37:21
**Krafka** [2] - 1:23, 49:16
**lack** [5] - 38:25, 39:5, 44:8, 46:17, 46:18
**Lakeside** [2] - 24:12, 33:9
**larger** [2] - 26:2, 34:14
**last** [5] - 4:5, 8:21,

8:23, 11:23, 12:23
**late** [1] - 43:9
**latent** [4] - 4:15, 5:12, 5:14, 5:18
**Laura** [2] - 7:4, 13:8
**Law** [1] - 1:20
**law** [9] - 19:21, 33:3, 33:5, 33:18, 34:19, 38:9, 42:12, 43:18, 45:9
**lawsuit** [1] - 42:11
**lawyer** [12] - 37:12, 37:25, 38:7, 38:12, 38:21, 38:24, 39:6, 40:7, 41:21, 43:10, 44:25, 45:1
**lawyers** [2] - 38:11, 42:23
**lease** [1] - 18:9
**least** [9] - 34:20, 36:7, 39:15, 40:6, 40:21, 40:23, 42:16, 42:18, 44:21
**leaving** [1] - 38:22
**left** [2] - 5:15, 31:25
**length** [1] - 45:21
**LEO** [1] - 43:21
**less** [3] - 40:2, 42:20, 47:1
**lessen** [1] - 41:14
**lesser** [1] - 25:16
**letter** [1] - 37:3
**letters** [2] - 37:1, 37:9
**level** [7] - 34:24, 35:21, 40:5, 40:7, 44:22, 44:24, 46:17
**lied** [1] - 41:16
**lies** [1] - 41:7
**life** [12] - 2:6, 2:10, 2:12, 2:13, 2:14, 36:4, 37:19, 41:13, 43:2, 43:10, 45:24
**light** [1] - 35:17
**link** [1] - 10:18
**listed** [1] - 19:2
**listen** [1] - 47:2
**live** [3] - 10:2, 23:23, 24:19
**lived** [3] - 22:14, 24:18, 29:17
**living** [2] - 29:19, 29:23
**located** [1] - 21:5
**look** [1] - 26:6
**looking** [4] - 10:10, 12:20, 12:23, 33:21
**looks** [3] - 5:18, 28:6, 46:10
**Lords** [2] - 27:1,

27:13
**losing** [1] - 38:1
**ma'am** [18] - 3:21, 8:11, 10:12, 29:18, 29:23, 30:1, 30:3, 30:11, 30:18, 30:24, 31:1, 31:4, 31:6, 31:9, 31:15, 31:17, 31:19, 32:16
**machine** [2] - 9:10, 9:11
**mad** [2] - 41:15, 41:16
**maintaining** [1] - 24:23
**man** [4] - 35:8, 35:9, 41:11, 45:23
**mandatory** [2] - 2:12, 46:9
**March** [10] - 2:6, 23:12, 23:14, 23:16, 23:18, 24:2, 24:5, 38:20
**marijuana** [6] - 19:5, 19:9, 19:10, 19:13, 19:14, 19:18
**marked** [1] - 6:4
**marshal** [1] - 33:25
**Marshal** [4] - 8:25, 9:3, 9:6, 11:4
**Marshals** [1] - 13:2
**MARY** [1] - 3:22
**Mary** [5] - 3:20, 4:6, 13:8, 13:11, 33:25
**match** [1] - 10:6
**matched** [1] - 10:4
**material** [1] - 30:9
**matter** [7] - 1:12, 2:3, 2:16, 7:10, 16:11, 38:15, 49:10
**mattress** [2] - 22:4, 30:4
**maximum** [1] - 2:11
**MCGEE** [1] - 1:7
**McGee** [14] - 2:4, 6:12, 6:18, 12:7, 16:2, 16:21, 34:23, 35:9, 35:24, 36:11, 45:23, 46:6, 47:10
**mean** [2] - 22:14, 27:5
**means** [1] - 39:4
**meeting** [2] - 19:25, 20:1
**MELISA** [1] - 1:17
**Melissa** [1] - 2:18
**member** [2] - 5:3, 27:1
**members** [1] - 27:7
**memorandum** [2] -

16:15, 34:16
**mention** [3] - 36:19, 37:11, 44:20
**mentioned** [5] - 30:20, 36:18, 37:9, 40:15, 49:8
**met** [2] - 37:16, 42:7
**mind** [1] - 37:17
**mine** [4] - 21:25, 25:21, 25:22, 44:9
**minimum** [1] - 2:12
**Mirandized** [3] - 21:15, 21:16, 33:10
**Miss** [1] - 22:18
**mistake** [1] - 28:5
**mitigating** [7] - 25:4, 31:20, 31:22, 33:4, 33:7, 33:13, 35:17
**mitigator** [1] - 33:2
**moment** [1] - 3:1
**money** [1] - 43:23
**months** [5] - 2:11, 35:23, 40:18, 45:6, 47:13
**moot** [2] - 2:14
**mother** [2] - 14:20, 23:15
**mother's** [2] - 23:22, 30:15
**motion** [1] - 38:12
**motions** [6] - 36:7, 37:20, 38:21, 38:22, 38:23
**motives** [1] - 41:20
**move** [4] - 6:21, 10:19, 13:22, 24:15
**moved** [2] - 24:14, 24:17
**moves** [1] - 34:19
**moving** [2] - 17:24, 26:5
**MR** [25] - 3:1, 3:6, 5:25, 6:24, 8:1, 8:3, 8:8, 10:21, 11:2, 11:11, 13:24, 14:24, 15:5, 15:24, 16:8, 16:13, 16:20, 28:10, 29:12, 32:18, 32:22, 34:10, 36:1, 45:14, 48:2
**MS** [28] - 3:10, 3:12, 3:18, 3:20, 4:3, 6:3, 6:21, 6:25, 7:24, 8:10, 8:12, 8:20, 9:19, 9:21, 10:19, 10:23, 11:12, 11:14, 11:22, 13:22, 14:1, 14:21, 15:7, 29:16, 32:17, 33:1, 45:5, 48:4
**multiple** [1] - 46:1

**must** [1] - 42:21
**name** [24] - 4:4, 4:5, 8:21, 8:22, 8:23, 11:23, 11:24, 12:15, 17:3, 17:6, 17:8, 17:10, 17:11, 18:12, 20:16, 24:10, 24:11, 26:8, 26:10, 26:12, 26:16, 26:19, 31:8, 33:11
**named** [3] - 6:11, 39:2, 39:4
**nature** [2] - 28:1, 45:18
**near** [1] - 24:5
**Nebel** [2] - 7:4, 13:8
**necessary** [1] - 47:8
**need** [6] - 2:24, 44:25, 46:2, 46:3, 46:20
**needed** [1] - 12:16
**never** [7] - 17:5, 17:11, 22:1, 24:18, 26:18, 29:17, 30:12
**new** [5] - 36:6, 36:7, 36:9, 38:12, 44:25
**newsletter** [1] - 5:6
**next** [1] - 9:17
**night** [3] - 20:23, 20:24, 21:6
**nights** [1] - 29:24
**nobody** [1] - 25:21
**none** [1] - 28:3
**Northern** [1] - 14:17
**note** [3] - 14:3, 14:6, 45:23
**nothing** [13] - 3:15, 3:24, 8:16, 11:12, 11:18, 16:4, 21:13, 23:3, 31:13, 39:21, 42:6, 43:24, 45:14
**noticed** [1] - 47:22
**November** [3] - 1:12, 15:14, 43:18
**number** [13] - 6:15, 6:19, 7:16, 10:7, 10:14, 10:16, 10:18, 17:19, 17:20, 17:21, 23:6, 45:25
**object** [3] - 5:16, 23:2, 23:3
**objected** [11] - 12:9, 16:22, 17:1, 18:20, 19:5, 19:6, 19:9, 21:7, 22:17, 26:23, 33:15
**objection** [5] - 10:21, 13:23, 13:24, 25:10, 28:20
**objections** [5] - 25:15, 28:14, 39:12,

39:13, 41:24
**objects** [1] - 15:9
**observed** [1] - 27:19
**obtain** [3] - 12:17, 13:1, 15:18
**obvious** [1] - 41:6
**obviously** [1] - 33:15
**occasion** [2] - 23:8, 29:25
**October** [9] - 2:5, 36:23, 36:24, 37:5, 40:8, 42:2, 42:15, 43:14, 43:16
**OF** [4] - 1:1, 1:4, 1:7, 49:5
**offense** [16] - 24:22, 24:25, 28:12, 28:25, 33:16, 34:24, 35:14, 35:21, 40:4, 40:7, 44:22, 44:24, 45:18, 45:20, 46:17
**offered** [2] - 49:9, 49:11
**office** [6] - 5:23, 13:10, 24:24, 34:23, 35:20, 45:11
**Office** [1] - 1:17
**officer** [6] - 12:6, 13:7, 14:16, 27:23, 33:10, 34:1
**officers** [8] - 17:10, 20:11, 21:16, 27:19, 31:2, 41:16, 43:19, 45:9
**official** [1] - 4:11
**old** [1] - 45:25
**omitted** [1] - 3:4
**once** [2] - 9:6, 9:22
**one** [21] - 7:14, 14:16, 17:19, 19:22, 26:25, 28:13, 28:22, 31:24, 31:25, 32:3, 33:3, 33:5, 33:8, 33:24, 34:12, 37:18, 39:3, 39:17, 42:2, 43:3, 45:20
**open** [1] - 31:25
**opinion** [1] - 7:12
**opinions** [1] - 38:8
**opposite** [2] - 33:5, 41:11
**options** [1] - 46:6
**orange** [1] - 9:18
**order** [2] - 34:25, 42:22
**organizations** [1] - 4:25
**ounce** [2] - 15:16, 15:18
**ounces** [2] - 40:17,

44:16
**outrageous** [1] - 42:4
**p.m** [1] - 48:6
**P.O** [1] - 1:24
**packaging** [1] - 30:9
**page** [6] - 12:23, 16:23, 16:24, 16:25, 17:1, 49:9
**pages** [1] - 49:10
**palms** [1] - 5:15
**papers** [9] - 38:3, 38:24, 39:1, 39:4, 39:8, 39:10, 43:6, 43:8, 43:9
**paperwork** [1] - 7:1
**paragraph** [28] - 2:21, 3:2, 3:17, 7:21, 12:13, 13:2, 13:13, 15:10, 18:1, 18:2, 18:17, 19:7, 19:20, 21:4, 21:14, 23:1, 23:11, 24:13, 25:13, 26:6, 26:24, 27:15, 34:2, 34:7, 35:10, 35:11
**paragraphs** [7] - 17:24, 19:3, 22:17, 22:23, 23:6, 24:21, 26:21
**parole** [3] - 27:22, 27:23, 28:2
**part** [8] - 9:5, 9:7, 25:11, 25:12, 25:19, 27:5, 31:25
**participated** [1] - 27:9
**particular** [2] - 5:22, 10:8
**particularly** [1] - 46:5
**partner** [1] - 7:3
**party** [1] - 5:21
**passing** [1] - 27:19
**past** [2] - 5:4, 5:7
**pay** [2] - 18:9, 41:18
**penalty** [1] - 28:3
**people** [5] - 17:9, 32:1, 42:10, 43:5, 44:7
**Peoria** [1] - 5:10
**per** [1] - 15:12
**performance** [1] - 38:11
**perhaps** [1] - 2:9
**period** [3] - 29:19, 29:20, 29:21
**permission** [1] - 6:2
**person** [17] - 6:11, 7:14, 20:3, 21:2, 26:8,

26:16, 31:22, 31:24, 32:1, 32:3, 33:3, 33:4, 40:6, 40:23, 40:24, 43:20, 44:21
**personal** [3] - 25:20, 40:11, 44:4
**phone** [5] - 15:15, 15:19, 29:4, 36:15, 36:18
**phones** [1] - 36:16
**phonetic)** [1] - 24:11
**photography** [1] - 5:17
**physical** [1] - 10:16
**pick** [2] - 13:10, 30:16
**picked** [1] - 41:1
**picture** [2] - 16:25, 28:6
**place** [6] - 18:2, 18:14, 28:3, 36:21, 43:14, 43:17
**placed** [2] - 29:6, 31:24, 32:1
**Plaintiff** [1] - 1:5
**planning** [1] - 38:2
**played** [4] - 15:17, 20:17, 25:11, 30:22
**point** [13] - 16:9, 22:11, 24:19, 28:13, 28:19, 28:21, 28:25, 29:2, 29:4, 29:13, 33:24, 35:13
**points** [7] - 2:23, 2:24, 15:8, 33:20, 34:6, 35:15, 35:18
**Police** [3] - 4:8, 12:14, 13:9
**police** [19] - 4:12, 6:14, 6:19, 13:16, 13:20, 15:15, 17:9, 25:21, 26:18, 27:17, 33:23, 38:6, 39:17, 39:19, 41:5, 43:21, 43:23, 44:2, 44:6
**Pollnitz** [3] - 17:7, 17:10, 17:13
**positive** [1] - 10:3
**possessing** [5] - 40:2, 41:9, 42:17, 42:20, 44:10
**possession** [3] - 25:20, 34:15, 41:10
**possible** [3] - 37:18, 40:20, 42:23
**powder** [5] - 5:17, 34:18, 34:21, 46:12, 46:14
**preponderance** [1] - 35:6

**present** [9] - 2:16, 3:9, 14:19, 15:23, 16:12, 18:22, 22:25, 23:23, 23:25
**presented** [1] - 3:14
**presentence** [1] - 12:6
**Presentence** [16] - 2:22, 3:5, 16:22, 17:2, 18:2, 18:18, 18:21, 21:9, 21:21, 22:24, 24:13, 24:21, 26:7, 26:14, 28:14
**presenting** [1] - 3:16
**president** [1] - 5:4
**pretty** [1] - 27:25
**previous** [1] - 10:5
**previously** [1] - 47:16
**primary** [1] - 4:14
**print** [6] - 5:12, 5:13, 5:14, 7:8, 10:7, 13:15
**printed** [1] - 13:3
**printout** [4] - 9:10, 10:11, 13:16, 13:18
**Prisons** [1] - 47:13
**Probation** [2] - 12:2, 12:5
**probation** [14] - 5:23, 14:15, 14:16, 24:24, 28:24, 34:1, 34:5, 34:23, 35:14, 35:20, 36:20, 36:22, 36:23, 36:25
**proceedings** [2] - 49:9, 49:12
**processing** [1] - 9:7
**professional** [1] - 4:25
**pronouncing** [1] - 36:5
**proof** [2] - 32:25, 35:7
**properly** [1] - 42:2
**prosecutor** [5] - 39:8, 41:17, 42:8, 43:3, 43:8
**prosecutors** [1] - 42:25
**protect** [1] - 46:4
**prove** [1] - 42:22
**proved** [2] - 36:15, 42:24
**proven** [1] - 42:23
**provided** [1] - 12:15
**proving** [2] - 38:3, 39:13
**PSI** [17] - 36:21, 37:12, 39:12, 39:16, 39:22, 40:3, 40:4,

40:16, 40:19, 41:24, 43:10, 43:11, 43:25, 44:11, 44:18, 44:19, 44:23
**PSR** [1] - 23:5
**public** [1] - 46:4
**punishment** [1] - 45:23
**purported** [1] - 21:19
**purporting** [1] - 15:1
**purpose** [1] - 20:20
**purposely** [1] - 41:21
**pursue** [1] - 36:6
**put** [5] - 5:5, 7:15, 10:17, 37:8, 39:11
**putting** [1] - 10:13

**Q**

**qualified** [1] - 25:12
**qualifies** [1] - 25:23
**qualify** [2] - 25:2, 25:8, 25:16, 28:19, 28:21, 32:1, 32:12, 33:7
**questions** [11] - 7:24, 8:9, 8:10, 10:23, 11:11, 14:21, 15:5, 16:10, 16:14, 29:12, 32:17
**quite** [2] - 45:24, 45:25

**R**

**racked** [1] - 45:24
**raise** [1] - 42:24
**raised** [2] - 34:8, 43:9
**range** [8] - 2:19, 35:22, 36:2, 40:22, 45:6, 46:8, 47:5, 47:7
**ratio** [1] - 46:14
**reaching** [1] - 44:15
**read** [7] - 25:6, 25:9, 28:19, 28:20, 37:1, 38:21, 39:22
**real** [1] - 24:11
**really** [3] - 7:10, 26:20
**reason** [3] - 2:14, 28:4, 43:25
**reasonable** [3] - 35:3, 35:8, 47:6
**received** [9] - 2:6, 6:23, 10:22, 13:25, 14:25, 15:2, 36:17, 37:3, 46:25
**recess** [1] - 48:5
**recognize** [3] - 6:5, 6:7, 9:8
**recognizing** [1] - 35:6
**recommend** [1] - 46:24
**recommendation** [1]

- 47:18
**reconnecting** [1] - 23:11
**record** [5] - 4:4, 8:21, 9:19, 11:23, 37:8
**recorded** [1] - 7:21
**recording** [1] - 21:19
**records** [3] - 14:25, 15:2, 46:21
**recovered** [3] - 5:16, 43:15, 43:17
**redirect** [1] - 32:18
**redo** [1] - 38:21
**reduce** [1] - 44:15
**reduction** [6] - 25:2, 25:9, 25:16, 25:24, 33:19
**refer** [1] - 16:23
**reference** [6] - 12:13, 13:13, 19:17, 19:20, 20:10, 21:4
**referencing** [1] - 17:24
**referred** [2] - 21:25, 22:18
**referring** [2] - 22:1, 22:15
**reflect** [1] - 9:19
**refused** [1] - 34:14
**regarding** [7] - 6:8, 11:7, 14:25, 18:19, 19:7, 24:25, 33:17
**regards** [1] - 13:2
**regulations** [2] - 39:7, 43:6
**rejected** [1] - 35:7
**related** [4] - 10:14, 15:10, 45:8, 46:2
**relates** [2] - 46:5, 46:12
**release** [3] - 45:7, 47:15, 47:16
**released** [2] - 14:13, 27:22
**relevant** [1] - 18:23
**remain** [2] - 47:10, 47:17
**remember** [7] - 15:14, 26:20, 27:24, 28:4, 31:5, 31:7, 31:10
**remembered** [1] - 27:25
**remorse** [1] - 46:18
**rent** [1] - 18:9
**repeat** [2] - 24:4, 34:11
**report** [12] - 6:8, 12:7, 13:16, 13:20, 14:2, 14:4, 18:21,

23:5, 27:17, 33:23, 40:3, 40:16
**Report** [16] - 2:22, 3:5, 16:22, 17:2, 18:2, 18:18, 18:21, 21:10, 21:21, 22:24, 24:13, 24:21, 26:8, 26:14, 28:14
**REPORTER** [1] - 49:5
**reporter** [1] - 49:8
**Reporter** [2] - 49:6, 49:17
**Reporting** [1] - 1:23
**reports** [2] - 12:24, 38:6
**represent** [1] - 47:2
**represented** [2] - 2:17, 2:18
**request** [1] - 42:3
**requested** [1] - 38:22
**resentencing** [1] - 2:16
**reside** [2] - 14:14, 18:15
**residence** [7] - 14:15, 14:17, 14:19, 17:25, 18:3, 18:15, 21:5
**residing** [3] - 18:3, 22:12, 23:22
**resolved** [1] - 2:25
**respect** [1] - 2:15
**responsibility** [6] - 25:14, 25:17, 32:7, 33:14, 33:19, 35:19
**responsible** [9] - 25:8, 39:20, 39:23, 40:9, 40:19, 43:11, 44:19, 44:24, 46:16
**resulted** [1] - 43:14
**resulting** [1] - 43:17
**return** [2] - 10:3, 32:20
**reviewed** [3] - 7:5, 13:11, 13:12
**reviewing** [3] - 13:21, 14:2, 26:14
**ridges** [1] - 5:15
**River** [1] - 27:22
**RMR** [1] - 1:23
**Rock** [4] - 4:8, 5:9, 5:11, 13:8
**rocks** [2] - 27:19, 28:1
**role** [17] - 24:22, 24:25, 25:5, 31:20, 31:21, 31:22, 32:4, 32:12, 33:1, 33:2, 33:3, 33:4, 33:7,

33:13, 35:17
**rule** [1] - 44:20
**rules** [5] - 37:13, 39:7, 41:10, 41:20, 43:6
**run** [1] - 47:13
**rush** [1] - 41:22

**S**

**sale** [1] - 20:12
**sales** [1] - 23:8
**Sanders** [26] - 15:14, 15:18, 18:19, 18:23, 19:7, 21:23, 22:7, 22:24, 23:6, 23:12, 23:19, 24:25, 29:3, 30:12, 33:12, 34:3, 35:5, 39:17, 40:17, 40:25, 41:4, 41:15, 43:20, 44:11, 44:13
**sanders** [1] - 41:15
**Sanders'** [2] - 18:24, 40:13
**Sara** [1] - 30:13
**saw** [2] - 19:22, 19:23
**scan** [1] - 10:2
**scene** [1] - 4:14
**school** [4] - 4:18, 4:19, 17:11
**science** [1] - 4:21
**Scott** [5] - 5:9, 24:15, 24:19, 30:13, 31:16
**search** [1] - 43:21
**searched** [1] - 43:23
**searching** [1] - 38:8
**seated** [5] - 2:2, 4:1, 8:18, 11:20, 16:6
**second** [2] - 14:16, 21:12
**section** [1] - 26:22
**Section** [1] - 45:17
**secure** [1] - 12:12
**Security** [2] - 10:16, 17:19
**see** [2] - 9:16, 28:7
**seeing** [1] - 26:16
**seeings** [1] - 27:24
**seeks** [1] - 34:17
**selling** [1] - 23:13
**sells** [1] - 33:11
**send** [1] - 10:1
**sent** [4] - 38:24, 39:1, 39:4, 39:5
**sentence** [16] - 2:7, 2:10, 2:14, 35:25, 36:2, 36:4, 36:5, 36:12, 41:14, 43:2, 44:15, 45:16, 47:7, 47:10, 47:14
**sentenced** [4] - 37:5, 39:11, 47:9, 47:12

sentences [2] - 37:19, 46:8

Sentencing [1] - 35:20

sentencing [21] - 2:5, 2:19, 16:15, 28:20, 33:21, 34:16, 40:5, 40:8, 42:1, 42:5, 42:14, 42:15, 43:1, 46:6, 46:8, 46:20, 47:4, 47:5, 47:9, 47:17

serious [1] - 45:21

seriousness [1] - 45:20

serve [1] - 5:4

served [1] - 5:4

service [1] - 20:19

Service [4] - 8:25, 9:3, 9:6, 11:4

set [2] - 2:15, 35:10

seven [1] - 45:8

several [3] - 5:8, 16:21, 20:10

Shakita [3] - 22:13, 30:13, 30:21

Sharkey [1] - 22:24

sheet [1] - 12:23

Shorthand [2] - 49:6, 49:17

shouting [1] - 27:19

showing [5] - 6:4, 9:8, 38:25, 39:5, 42:7

shown [2] - 38:25, 49:12

siblings [1] - 14:20

side [3] - 19:22, 19:24, 20:4

signs [1] - 42:7

similar [3] - 10:1, 46:21, 46:22

simple [2] - 5:19, 41:10

simply [3] - 15:1, 41:20, 47:2

sitting [1] - 9:17

situation [1] - 41:22

situations [2] - 41:18, 45:2

six [2] - 36:7, 44:6

Social [2] - 10:16, 17:19

sock [1] - 30:9

sold [4] - 31:3, 31:12, 40:17, 44:16

soliciting [2] - 28:12, 35:10

someone [5] - 19:22, 19:25, 24:6, 39:23, 47:2

sometime [1] - 24:14

soon [1] - 37:18

sorry [1] - 13:21

sort [1] - 31:24

source [3] - 31:7, 31:12, 33:11

South [3] - 14:7, 14:8, 23:24

SOUTHERN [1] - 1:1

Southern [2] - 1:14, 1:17

speaking [1] - 43:5

special [1] - 47:18

specifically [2] - 19:6, 26:24

spell [3] - 4:4, 8:21, 11:23

spelled [1] - 17:7

spelling [1] - 8:23

spend [1] - 29:24

Spires [3] - 39:2, 39:4

spoken [1] - 5:5

stand [3] - 15:25, 34:11, 39:12

standard [1] - 35:7

started [2] - 36:23, 36:24

starting [1] - 18:1

starts [1] - 34:24

state [4] - 4:4, 8:21, 11:23, 38:18

State [1] - 4:20

statement [2] - 40:24, 44:13

statements [3] - 33:10, 38:1, 38:5

STATES [2] - 1:1, 1:4

states [1] - 36:22

States [9] - 1:14, 1:17, 1:18, 2:3, 8:12, 11:14, 12:2, 45:17, 49:7

statutory [1] - 2:11

stayed [3] - 13:12, 22:13, 24:11

staying [1] - 23:15

still [3] - 27:21, 35:2, 46:16

store [2] - 30:2, 30:5

stored [1] - 30:4

stories [1] - 41:5

storing [1] - 30:5

Street [3] - 1:13, 1:18, 1:20

street [5] - 26:23, 27:1, 27:4, 27:7, 27:12

strong [1] - 45:10

subject [1] - 5:20

subjects [1] - 27:19

substantial [1] - 46:18

sufficient [1] - 47:8

suggest [2] - 16:14, 35:22

suggests [1] - 33:3

summer [2] - 15:13, 34:4

supervised [3] - 45:7, 47:15, 47:16

supervisor [3] - 12:18, 32:4, 33:5

supplied [1] - 33:25

supply [1] - 19:2

supplying [2] - 23:8, 33:9

support [1] - 38:2

supposed [2] - 39:10, 44:22

surprise [1] - 42:5

sworn [4] - 3:23, 8:15, 11:17, 16:3

System [1] - 9:11

system [6] - 10:4, 10:11, 10:17, 13:3, 37:2, 47:4

T-A-D-Y [1] - 11:25

table [1] - 32:20

Tady [4] - 5:23, 7:2, 11:15, 11:25

TADY [1] - 11:16

talks [2] - 23:11, 24:21

taxi [4] - 20:11, 20:13, 20:15, 20:17

taxicab [1] - 20:19

Taylor [1] - 17:16

Tazewell [1] - 5:10

ten [4] - 40:17, 45:6, 47:15, 47:21

ten-year [1] - 47:15

term [1] - 47:15

terms [3] - 5:14, 47:16, 47:19

Terry [2] - 8:12, 8:23

TERRY [1] - 8:14

testified [7] - 3:25, 5:7, 5:8, 8:4, 8:17, 11:19, 16:5

testify [1] - 3:24, 8:16, 11:18, 16:4, 22:19, 23:9

testimony [13] - 11:3, 15:12, 22:18, 29:3, 33:6, 33:24, 34:3, 35:2, 35:5, 35:18, 46:19, 49:9, 49:11

that'll [1] - 47:13

THE [43] - 1:1, 1:1, 2:2, 3:4, 3:8, 3:11, 3:16, 3:19, 3:21, 4:1, 6:1, 6:23, 7:25, 8:11, 8:18, 10:22, 10:24, 11:13, 11:20, 13:25, 14:22, 15:6, 15:22, 16:1, 16:6, 16:7, 16:11, 16:18, 28:6, 28:8, 28:9, 29:14, 32:20, 32:24, 34:9, 34:22, 36:11, 36:13, 45:4, 45:13, 45:15, 48:3, 48:5

therefore [4] - 2:13, 18:23, 33:23, 34:6

they've [3] - 10:5, 10:6, 19:24

third [1] - 43:19

Third [1] - 1:18

thousands [1] - 4:24

three [5] - 17:1, 26:21, 39:16, 44:7, 44:11

thumb [3] - 6:16, 7:5, 7:11

Thursday [1] - 1:12

timely [2] - 47:23, 48:1

Title [1] - 45:17

title [2] - 4:11, 49:9

today [11] - 2:16, 2:25, 9:16, 14:14, 16:12, 33:25, 35:18, 36:5, 37:6, 46:19, 47:22

together [2] - 5:5, 23:13

took [12] - 9:13, 9:14, 9:15, 22:16, 29:9, 30:18, 36:21, 43:14, 43:16, 43:25, 44:11, 44:13

top [4] - 12:24, 16:24, 16:25, 47:7

total [2] - 21:6, 40:19

town [1] - 13:7

track [1] - 16:17

training [2] - 4:17, 5:4

transcribed [1] - 49:9

TRANSCRIPT [1] - 1:7

transcript [3] - 49:9, 49:11, 49:11

travel [1] - 22:6

traveling [1] - 33:8

treat [1] - 34:17

treated [1] - 34:21

trial [23] - 3:13, 3:14, 15:12, 19:21, 21:20, 22:19, 23:6, 30:22, 31:14, 32:14, 33:6, 34:3, 35:2, 35:18, 37:20, 39:9, 39:10, 39:24, 42:10, 43:7, 45:12

tried [5] - 38:16, 43:8, 43:10, 43:19, 44:2

trips [1] - 30:16

trouble [1] - 41:6

true [2] - 21:24, 49:11

Trumbull [3] - 14:7, 14:8, 23:24

truth [13] - 3:24, 8:16, 11:18, 16:4, 44:14

truthfully [2] - 22:19, 23:9

trying [7] - 32:10, 37:25, 40:14, 41:21, 41:22, 43:1, 44:24

turning [1] - 19:20

twice [2] - 31:3, 37:11

two [15] - 2:7, 3:6, 5:1, 9:4, 13:5, 23:13, 33:8, 34:6, 34:12, 36:16, 37:19, 38:15, 40:17, 40:18, 44:17

type [1] - 28:2

typewritten [1] - 49:10

U.S [3] - 1:17, 8:25, 13:2

under [6] - 17:11, 22:4, 26:8, 26:9, 30:4, 35:20

undersigned [1] - 49:6

UNITED [2] - 1:1, 1:4

United [8] - 1:14, 1:17, 1:18, 2:3, 8:12, 11:14, 12:2, 45:17

unlawful [1] - 28:12, 35:11

unwarranted [1] - 46:20

up [16] - 10:6, 10:18, 13:10, 20:11, 20:13, 20:20, 20:23, 30:17, 30:19, 31:18, 37:17, 38:16, 39:18, 41:1, 45:24

upset [2] - 38:8, 42:10

utility [1] - 18:11
V-I-N-E [1] - 4:6
vagrancy [5] - 28:15, 28:18, 33:21, 33:23, 35:12
variance [1] - 34:20
various [4] - 4:20, 5:7, 5:16, 38:3
vent [1] - 44:6
verdict [3] - 21:8, 25:15, 34:13
version [1] - 3:5
versus [1] - 2:3
Vice [2] - 27:1, 27:13
victim [1] - 5:20
viewed [1] - 7:16
viewing [1] - 7:12
violate [1] - 27:23
violations [1] - 27:24
visit [1] - 37:20
visiting [7] - 18:8, 22:15, 23:17, 24:6, 24:9, 39:20, 44:2
vital [1] - 38:22
voice [1] - 30:25
vs [1] - 1:6
walked [1] - 20:4
wants [2] - 36:9, 43:4
warrant [3] - 33:12, 38:17, 38:19
warranted [2] - 33:19, 34:6
wearing [1] - 9:17
Webster [1] - 5:9
week [1] - 24:8
weeks [3] - 33:8, 40:17, 44:17
weighed [1] - 46:20
weight [3] - 2:20, 3:9, 46:15
Weston [1] - 1:23
whole [5] - 3:24, 8:16, 11:18, 16:4, 28:20
winnable [1] - 37:20
wish [4] - 15:23, 16:11, 36:12, 41:24
wishes [1] - 15:24
witness [5] - 3:23, 5:25, 8:15, 11:17, 16:3
witnesses [1] - 3:19
wondering [1] - 42:3
works [1] - 37:2
write [2] - 12:7, 37:10
wrote [2] - 36:19, 37:1
year [2] - 11:8, 47:15

years [5] - 4:10, 9:3, 9:4, 45:6, 45:25
young [1] - 45:23
Zaehringer [5] - 2:18, 29:14, 35:25, 45:4, 48:3
ZAEHRINGER [30] - 1:17, 3:10, 3:12, 3:18, 3:20, 4:3, 5:25, 6:3, 6:21, 6:25, 7:24, 8:10, 8:12, 8:20, 9:19, 9:21, 10:19, 10:23, 11:12, 11:14, 11:22, 13:22, 14:1, 14:21, 15:7, 29:16, 32:17, 33:1, 45:5, 48:4