IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:07-cr-634 |
| | ) | |
| CHRISTOPHER JAMES MCGEE, | ) | **GOVERNMENT BRIEF** |
| | ) | **ON APPLICATION OF** |
| Defendant. | ) | **FIRST STEP ACT** |
| | ) | |

The United States of America, by and through its undersigned counsel, respectfully submits

the following Government Brief on in response to McGee's Motion for a Reduced Sentence:

**TABLE OF CONTENTS**

Facts……………………………………………………………………………….. 2

The First Step Act…………………………………………………………… 3

Under the Plain Language of the First Step Act
Defendant is Not Eligible for Relief……………………………………… 5

Denying Defendant Relief Does Not Violate Apprendi and Alleyne………….. 28

**Facts**

1.      On March 12, 2008, Christopher McGee was charged by Superseding Indictment with the following charges: Count 1-Conspiracy to Distribute at least 50 grams of cocaine base, in violation of Title 21, United States Code, §§ 846 and 841(b)(1)(A); and Count 2-Possession with Intent to Distribute 50 grams or more of cocaine base, in violation of Title 21, United States Code, § 841(a)(1) and 841(b)(1)(A). (District Court Docket, hereinafter "DCD," 8.) On June 1, 2009, pursuant to 21 U.S.C. § 851, an Information was filed notifying McGee that if convicted, his sentence could be enhanced by two prior Cook County, Illinois felony drug offense convictions: 2002-Manufacture/Deliver 1-15 grams of cocaine; and 2001-Delivery of Controlled Substance. (DCD 101.)

2.      McGee proceeded to trial. On June 2, 2009, a jury found McGee guilty on both Counts 1 and 2. (DCD 110.) Additionally, the jury found that McGee was responsible in the conspiracy conviction for 50 grams or more of crack cocaine, and in the possession with intent to distribute conviction, less than 5 grams of crack cocaine. (DCD 110.) The Final Presentence Report (PSR) attributed 1,643 grams of cocaine base to McGee (DCD 138 ¶ 49) and calculated his United States Sentencing Guideline (USSG) range as follows: USSG §2D1.1(c)(1) (at least 1.5 kg cocaine base): 34. (PSR ¶¶ 57-66.) Level 34/Criminal History IV= 210-262 months' imprisonment. (PSR ¶ 125) However, based on the two prior convictions for felony drug offenses, on Count 1, McGee was subject to a statutory mandatory minimum sentence of life imprisonment. (PSR ¶ 124.)

3.      On October 9, 2009, the district court ordered a mandatory life sentence on Count 1 (conspiracy to distribute more than 50 grams), and a concurrent sentence of 360 months on Count 2. (DCD 163, Sentencing Transcript No. 1, hereinafter "ST1," 12-13.) Because of the

previous ruling and findings, the district court found Guidelines issues were moot as the sentence was driven by the mandatory minimum life sentence. *Id*. at 12. However, on the same day the district court withheld final judgement on Count 2 and a re-sentencing was scheduled. (DCD 150.)

4.      On November 5, 2009, the district court considered evidence in relation to determination of drug weights and identity in relation to prior convictions attributed to McGee. (DCD 180, Sentencing Transcript No. 2, hereinafter "ST2" 2.) In support of drug quantities, the government relied on the trial record. (ST2 3.) McGee was placed under oath and testified. (ST2 16.) McGee denied residing at the residence involved in drug trafficking (ST2 18), involvement in drug trafficking with co-conspirators (ST2 18-19), involvement in street drug transactions occurring during the conspiracy (ST2 19-20), claimed he had "no idea" about 57.33 grams of crack cocaine seized out of his residence (ST2 21), claimed no recollection of his admissions to law enforcement officers (ST 2 21), denied ever traveling to Chicago to obtain drugs in furtherance of this charged conspiracy (ST2 22), claimed witnesses testifying against him at trial were lying (ST 22-24), denied association with any gangs (ST2 26-27), and denied that a picture in evidence establishing his identity in a prior conviction was him (ST2 28). McGee denied any and all involvement in the conspiracy proven at trial. (ST2 29-32.)

5.      The district court found, based on credible testimony at trial that McGee was responsible for between 500 grams and 1.5 kilograms of crack cocaine. (ST2 34-35.) The district court also found that McGee was the same defendant convicted in PSR ¶¶ 69 (2000-possession of a controlled substance) and 73 (2006-soliciting unlawful business). (ST2 35.) The district court noted that "[t]his defendant was deeply involved in this conspiracy and is not entitled to a mitigating role and certainly in light of the testimony here today and at trial is not entitled to

3

points off for acceptance of responsibility." (ST2 35.) In imposing sentence, the district court considered that McGee had racked up quite a criminal history for a young man, the important need that any sentence provide adequate deterrence and protection to the public, and the complete lack of remorse demonstrated again at sentencing. (ST2 45-46.) Based on all these circumstances of the offense, the Court ordered a sentence at the top end of the Guideline range of a concurrent 262 months' prison. (DCD 166, ST2 47.)

6.      If the district court finds McGee's prior conviction was for a covered offense, then under the current drug quantity tables, McGee's USSG range would be calculated as follows: USSG §2D1.1 (> 840 g, less than 2.8 kg): 32. This computation would result in an advisory range of Level 32/Criminal History IV = 168-210 months' imprisonment.

## The First Step Act

7.      On December 21, 2018, the President signed the First Step Act of 2018, which, in part, made certain provisions of the Fair Sentencing Act of 2010 (FSA) retroactive to defendants who received mandatory minimum sentences prior to August 3, 2010 (*First Step Act*, Pub. Law No. 115-291, December 21, 2018). Specifically, Section 404(b) states a court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed. Section 404(c) describes some limitations on this retroactive application, stating that "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence

was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

8.      The plain meaning of the First Step Act supports a limited application of the FSA. First, the district court must determine if the offense is a "covered offense." Under Section 404(a), a "covered offense" is a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act that was committed prior to August 3, 2010. If a defendant committed a violation of a "covered offense," then the district court may impose a reduced sentence as if section 2 or 3 were in effect at the time the covered offense was committed. *See*, Section 404(b).

9.      Section 2 of the FSA amended the threshold drug quantities in 841(b)(1)(A) from 50 to 280 grams of cocaine base, and in 841(b)(1)(B) from 5 to 28 grams of cocaine base. Other than as allowed by the First Step Act, the FSA is not retroactive. *United States v. Neadeau*, 639 F.3d 453, 456 (8th Cir. 2011) ("The Fair Sentencing Act was not retroactive …"); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010) (noting that the Fair Sentencing Act contains no express statement that it is retroactive). The First Step Act expressly stated an intent that only the amendments to the mandatory minimum thresholds for cocaine base in Sections 2 and 3 are to be applied retroactively.

**Under the Plain Language of the First Step Act Defendant is Not Eligible for Relief**

10.      The Superseding Indictment returned in 2008, charged conspiracy to distribute 50 grams or more of cocaine base, and possession with the intent to distribute 50 grams or more of cocaine base, all counts implicating penalties under § 841(b)(1)(A). Based on the trial record, the district court found McGee was responsible for more than 500 grams of cocaine base.

11.     The defendant is not eligible for relief under Section 404 of the First Step Act, which authorizes retroactive application of the Fair Sentencing Act of 2010, because the same statutory penalties applied to the defendant's violation of a Federal criminal statute both before and after the FSA. The FSA increased the threshold crack quantity for a Section 841(b)(1)(A) offense to 280 grams, but given that the quantity involved in this case, and found by the district court based on the trial record, exceeds that amount, the statutory penalties remain the same.

12.     The defendant argues that he is eligible for relief because the Superseding Indictment specifically charged an offense involving only 50 grams of crack, and under the FSA, the penalties for that quantity are limited to those under Section 841(b)(1)(B).[1] Defendant contends that application now of higher penalties based on the district court's quantity finding at sentencing would violate the rules stated in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). These arguments fail, as they are defeated by the pertinent statutory language and relevant precedent. The government charged 50 grams in the Superseding Indictment only because that was the pertinent statutory minimum threshold at the

---

1   For offenders sentenced before the effective date of the Fair Sentencing Act, August 3, 2010, § 841(b)(1)(A) applied to an offense involving 50 grams of crack or more, and required a mandatory minimum sentence of 10 years' imprisonment (increased if the defendant had one or two prior felony drug convictions) and permitted a maximum sentence of life. Section 841(b)(1)(B) applied to an offense involving 5 grams of crack or more, and required a mandatory minimum sentence of 5 years' imprisonment (increased to 10 years if the defendant had a prior felony drug conviction) and permitted a maximum sentence of 40 years (increased to life if the defendant had a prior felony drug conviction). Under the Fair Sentencing Act, the thresholds were changed to 280 grams under § 841(b)(1)(A) and 28 grams under § 841(b)(1)(B). Both before and after the Fair Sentencing Act, the government charged and proved only the threshold quantity required by the statute (*i.e.*, under § 841(b)(1)(A), 50 grams before the Act, and 280 grams after; or, under § 841(b)(1)(B), 5 grams before the Act, and 28 after). Once the threshold quantity is established by the jury's verdict or defendant's plea, the court then has discretion to impose a sentence within the applicable statutory maximum, and to find sentencing facts by a preponderance of the evidence, in accord with *United States v. Booker*, 543 U.S. 220 (2005).

time. Re-imposing a different sentence now, constrained by this 50 gram quantity, would create a gross disparity with similarly situated offenders charged after the FSA was adopted in 2010, and defeat the plain Congressional intent in the First Step Act of assuring like treatment of like offenders.

13.     Pursuant to 18 U.S.C. § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed except that (1) . . . (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." The relevant statute here—the First Step Act—does not permit relief in this case.

Section 404(b) of the First Step Act provides:

> A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Section 404(c) makes clear that any sentence reduction is discretionary, stating, "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

14.     A straightforward reading of Section 404 calls for the court to make two sequential determinations: first, whether it may impose a reduced sentence, and second, what sentence would have been appropriate had the FSA been in effect at the time the defendant committed his crime.

15.     Section 404(b) authorizes a sentence reduction only if the court previously imposed a sentence for a "covered offense." A "covered offense," in turn, is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." Public Law 111-220, 124 Stat. 2372. The statute thus keys eligibility not on the defendant's statute of conviction,

7

but on the specific "violation of a Federal criminal statute" that the defendant "committed." A "violation of a Federal criminal statute" qualifies as a "covered offense" only if the "statutory penalties for" that violation were "modified by sections 2 or 3 of the Fair Sentencing Act." By referring to a "violation" that was "committed" on a particular date, Section 404(a) grounds the eligibility inquiry in the actual conduct involved in the defendant's violation, rather than limiting the offense to the statute under which the defendant was convicted. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), for instance, the Supreme Court held in the context of 18 U.S.C. § 1964(c) that the term "violation" "refers only to a failure to adhere to legal requirements," not a criminal conviction. The Court explained that when Congress wishes to refer to "prior convictions, rather than prior criminal activity," it uses the term "conviction," not "violation." *Id.* at 489 n.7. And in *United States v. Hayes*, 555 U.S. 415 (2009), the Court held that a statute defining a prior conviction for a "misdemeanor crime of domestic violence" referred in part to the defendant's actual conduct, not the statutory elements of the crime, when it described the prior offense as one "*committed by* a current or former spouse, parent, or guardian." *Id.* at 426 (emphasis added) (quoting 18 U.S.C. § 921(a)(33)(A));[2] *cf. Nijhawan v. Holder*, 557 U.S. 29, 32 (2009) (holding that a statutory term describing a prior "offense" referred not to a generic crime but to the "particular circumstances in which an offender committed" that offense "on a

---

[2]   In the statute at issue in *Hayes*, the term "misdemeanor crime of domestic violence" was defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." The Court held that the domestic relation of the perpetrator need not be an element of the offense of conviction; rather, the government may prove as a factual matter that the person who "committed" the offense at issue fell within one of the described relationships.

particular occasion").

16.     Here, Congress could have declared eligible "any defendant convicted under a statute for which the penalties were altered by the Fair Sentencing Act of 2010, so long as that defendant has not already been sentenced in accordance with that Act." Instead, Congress focused specifically on the "violation of a Federal criminal statute" that was "committed." Indeed, similar to the interpretation in *Hayes*, Congress's use of the word "committed" in Section 404(a) of the First Step Act directs review to the particular facts of the case because Congress added a date-based qualifier: "that was committed before August 3, 2010." Thus, the inquiry into what counts as a "covered offense" necessarily turns on facts specific to the defendant's offense—when it was committed—and not merely the statutory definitions that appear in 21 U.S.C. § 841(b)(1).

17.     Accordingly, Congress intended courts assessing eligibility to take a case-specific approach focusing on the actual violation at issue. Courts therefore should not disregard the actual quantity of crack involved in defendants' offenses—especially if the defendant admitted or did not dispute those quantities. If, as is the case here, the defendant's "violation" involved a quantity of crack that would have triggered the same penalty after enactment of the FSA, then that defendant's "violation" is not one for which the statutory penalties were modified by the FSA. Accordingly, the court did not impose a sentence for a "covered offense," and the defendant is ineligible for a reduced sentence.

18.     McGee argues that a defendant is eligible for relief merely by the fact that the penalties set forth in a statute under which he was charged were modified, regardless of the actual facts of the offense. But this conclusion misreads the statute, erroneously construing the phrase "the statutory penalties for which" to modify only "Federal criminal statute," rather than

9

the full phrase "a violation of a Federal criminal statute." McGee's parsing out the reference to "statute," instead of applying the entire phrase "violation of a Federal criminal statute," eliminates critical and plain language contained in Section 404, and thereby alters the interpretation of the statute read as a whole.

19.    McGee's interpretation incorrectly changes the meaning of the statute as written. First, if all that mattered in determining eligibility were whether the penalties associated with the defendant's statute of conviction were modified, then any defendant convicted of any drug offense under Section 841 would be eligible for a reduction, even if the offense did not involve crack cocaine. Plainly, Congress included the word "violation" to ensure that only those defendants whose penalties actually were affected by the Fair Sentencing Act would be eligible for a discretionary reduction. And second, if the defense construction were correct, it would make no sense for Congress to have included the word "statutory" in describing the relevant penalties. That is, if Congress intended the phrase "the statutory penalties for which" to modify only "Federal criminal statute," Congress naturally would have dropped "statutory" to avoid an immediate redundancy ("a Federal criminal statute, the penalties for which. . . .").

20.    Moreover, Section 404 directs particular attention to the circumstances under which the particular violation was "committed," not to the statute of conviction alone. Both Sections 404(a) and 404(b) address the date of commission, and in Section 404(a) in particular, Congress added a date-based qualifier: "that was committed before August 3, 2010." Thus, the inquiry into what counts as a "covered offense" necessarily turns on facts specific to the defendant's offense—when it was committed—and not merely the statutory definitions that appear in 21 U.S.C. § 841(b)(1).

21.     Thus, from the plain language of Section 404, a defendant is eligible only if the statutory penalties for his violation of a Federal criminal statute were modified by the Fair Sentencing Act. This interpretation is also consistent with the express perspective of the First Step Act itself, to review a defendant's sentence as if the FSA was in effect at the time of the initial sentencing. Not eliminate established drug quantities, because the government did not allege 280 grams in the indictment, in anticipation of an unprecedented Congressional amendment, ten years later. In other words, Congress directed courts assessing eligibility to take a case-specific approach, focusing on the actual violation at issue. Courts therefore should not disregard the actual proven quantity of crack involved in defendants' offenses—especially if the defendant admitted or there is no dispute as to those quantities. If, as is the case here, the defendant's "violation" involved a quantity of crack that would have triggered the same penalty after enactment of the Fair Sentencing Act, then that defendant's "violation of a Federal criminal statute" is not one for which the statutory penalties were modified by the Fair Sentencing Act. Accordingly, the court did not impose a sentence for a "covered offense," and the defendant is ineligible for a reduced sentence.

22.     The defendant's contrary reading not only conflicts with the statutory text, but also conflicts with Congress's manifest intent, as it would lead to profoundly unfair and illogical disparities between defendants charged before and after the Fair Sentencing Act. There is no dispute that Congress, in enacting Section 404 of the First Step Act in 2018, was concerned about a particular class of cocaine base defendants: those whose statutory penalties would have been lower but for the fortuity that they were sentenced before August 3, 2010, and therefore could not take advantage of the Fair Sentencing Act. *See Dorsey v. United States*, 567 U.S. 260 (2012). For instance, if a crime involved 200 grams of crack, and the defendant was sentenced

11

under Section 841(b)(1)(A) before August 3, 2010, a court should consider whether to grant a reduced sentence, as the Fair Sentencing Act places the 200-gram offense in Section 841(b)(1)(B). This relief puts the offender in an identical position to those sentenced after August 3, 2010. If, however, the original crime involved at least 280 grams of crack, the defendant's violation would have triggered the same Section 841(b)(1)(A) penalties both before and after the Fair Sentencing Act. If such a defendant had been sentenced after the Fair Sentencing Act, all agree that he could not obtain a discretionary reduction of sentence today. But under the defense approach, had that same defendant been sentenced before the Fair Sentencing Act took effect, he would now be entitled to a discretionary reduction of sentence limited to drug quantity alleged in the indictment. Nothing in the text or legislative history of the First Step Act suggests that Congress would have countenanced this asymmetry, which is unfair to defendants sentenced after enactment of the Fair Sentencing Act.

23.     The history of McGee's conviction and sentence illustrates this point. Based on the district court findings that based on the trial record, he was responsible for more than 500 grams, but less than 1.5 kilograms, of crack cocaine, McGee's offense indisputably involved more than 280 grams of crack, calling for the same 841(b)(1)(A) penalties under the drug-trafficking statute. Every crack offender charged with and convicted of a violation involving the same drug quantity, but committed since August 3, 2010, has been sentenced under that same provision. If the defendant here were to receive a sentence reduction based on the narrow assertion that his offense involved only 50 grams of crack, his statutory sentencing exposure would be lower than that faced by everyone who was charged with the same crime after August 3, 2010. The purpose of the First Step Act was to reconcile the disparity between those sentenced before the Act and those sentenced afterwards. It would turn that goal on its head to instead

afford greater relief, untethered to any actual facts, to earlier offenders.

24.     Under defendant's argument, nearly *every* defendant charged under Sections 841(b)(1)(A) or (b)(1)(B) before the FSA would now be eligible for a sentence reduction. In fact, every defendant charged prior to August 3, 2010 under Section 841(b)(1)(A) would be eligible for a reduction. Before the FSA, there was no reason for any prosecutor to allege in an indictment or information, more than 50 grams for a subsection A offense, or more than 5 grams for a subsection B offense. Under the FSA, however, those specific quantities—50 grams and 5 grams—are treated less severely. Thus, under the defense view, nearly every defendant charged under those statutes would be treated differently from identically situated defendants charged after the FSA became effective, even if their violations involved crack quantities substantially exceeding the new statutory thresholds. The defendant does not, and cannot, offer any justification for the mass disparity he seeks, or any explanation of why Congress would have intended such an odd result.

25.     Instead, the defense suggests that denial of eligibility at this time, resting on the factual determinations made at the original sentencing, would violate the rulings in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), that any fact increasing either a statutory maximum or mandatory minimum penalty must be charged in an indictment and found by a jury or admitted by the defendant.[3] But these cases do not apply here, because the First Step Act authorizes a court only to "reduce" a sentence, not increase it, and

---

3   In fact, *Alleyne* applied to very few, if any, defendants who might benefit from the First Step Act. Any defendant sentenced before August 3, 2010, and whose conviction became final before *Alleyne* was decided on June 17, 2013, was subject to the rule of *Harris v. United States*, 536 U.S. 545 (2002), that a jury need not find a quantity increasing a mandatory minimum sentence, a decision later overruled in *Alleyne*.

further makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Section 404(c).

26.     The consideration of a sentencing reduction under the First Step Act is similar to the reduction issue in *Dillon v. United States,* 560 U.S. 817 (2010). In *Dillon*, the court considered a motion for sentencing reduction under 18 U.S.C. § 3582(c)(2). *Id*. at 826-29. Section 3582(c)(2) allows a court to reduce a sentence, in its discretion, upon adoption of a sentencing guideline amendment designated by the Sentencing Commission as retroactive. *Id*. at 824-25. The Commission's policy statement implementing Section 3582(c)(2) decreed that a court could not, except in limited, specified circumstances, reduce a sentence below the range set by the amended guideline provision. *Id*. at 822; and USSG §1B1.10(b)(2)(A). Defendants objected that a further reduction should be allowed under *Booker v. United States*, 543 U.S. 220 (2005), which rendered the guidelines advisory to remedy a violation of *Apprendi. Id*. at 825.

27.     The Supreme Court disagreed. It stated that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding." *Id*. at 825. Rather, it allows courts to "reduce" a sentence of imprisonment in limited circumstances identified by the Sentencing Commission. *Id*. The Court explained:

> Given the limited scope and purpose of § 3582(c)(2), we conclude that proceedings under that section do not implicate the interests identified in *Booker*. Notably, the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather, § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.

> Viewed that way, proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's

exercise of discretion within that range.

*Id.* at 828. This reasoning applies with full force here. The retroactive application of the FSA is not constitutionally compelled, but rather is an act of Congressional lenity. *See*, *Dillon*, at 828 (noting that sentencing reductions pursuant to § 3583(c)(2) represented a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the Guidelines). That is because, as an ordinary rule and absent a Congressional declaration, new statutory provisions do not abrogate prior penalties. *See* 1 U.S.C. § 109. The First Step Act solely calls for the court to determine whether the statutory penalties would have been different based on the "violation" the defendant "committed," and if so, exercise discretion in determining whether to reduce the sentence.

28.     Further, *Dillon* observed, "[i]t is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered by the Commission. Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon,* 560 U.S. at 825-26.

29.     Here, the legislation at issue uses precisely the same term as that seen in Section 3582(c)(2), providing authorization to "reduce" a sentence, not re-impose it. Further, as in the Section 3582(c)(2) context, the Act applies only to a narrow set of offenders, *i.e.*, those who committed crack cocaine offenses and were sentenced before August 3, 2010. And the Act expressly states that the court is not required to reduce any sentence.[4]

---

4   Section 3582(c)(2), addressed in *Dillon*, states that "the court may *reduce* the term of imprisonment." Section 404(b) of the First Step Act states that the court may "*impose a reduced sentence*," while Section 404(c) states: "No court shall entertain a motion made under this section to *reduce* a sentence if the sentence was previously imposed or previously *reduced* in

Finally, the *Dillon* court added:

> This understanding of § 3582(c)(2) as a narrow exception to the rule of finality finds further support outside the statute. Federal Rule of Criminal Procedure 43 requires that a defendant be present at "sentencing," *see* Rule 43(a)(3), but it excludes from that requirement proceedings that "involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)," Rule 43(b)(4). Like § 3582(c)(2), Rule 35 delineates a limited set of circumstances in which a sentence may be corrected or reduced. Specifically, it authorizes a court to "correct a sentence that resulted from arithmetical, technical, or other clear error" within 14 days after sentencing, Rule 35(a), and it authorizes a reduction for substantial assistance on the Government's motion, Rule 35(b). Rule 43 therefore sets the proceedings authorized by § 3582(c)(2) and Rule 35 apart from other sentencing proceedings.

*Dillon*, 560 U.S. at 827-28. Rule 43 by its term applies to *all* motions under Section 3582, not just motions under Section 3582(c)(2) based on retroactive guideline amendments. Rule 43 therefore applies here, where the sentencing reduction is authorized by Section 3582(c)(1)(B), and thus the Supreme Court's explanation applies here too.[5] These proceedings, as in *Dillon*, do

---

accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to *reduce* the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to *reduce* any sentence pursuant to this section." The terminology of the First Step Act follows that of Section 3582(c)(2).

Yet some defendants argue that the singular use of the term "impose a reduced sentence" in Section 404(b) mandates a *de novo* resentencing. This argument is unpersuasive. As one court observed, "[t]he First Step Act's use of the word 'impose' must be read in context. . . . The First Step Act authorizes a court to 'impose a reduced sentence,' and otherwise refers to a proceeding to 'reduce' a sentence. . . . The First Step Act does not call for a full or plenary resentencing." *United States v. Potts*, 2019 WL 1059837, at *3 (S.D. Fla. Mar. 6, 2019). Indeed, in discussing sentence reductions under Section 3582(c)(2)—which are not *de novo* resentencings—the Supreme Court has freely used the word "impose" in relation to the new, lower sentence that results from applying the retroactive amendment. *See, e.g.*, *Dillon*, 560 U.S. at 827 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range."). Nothing in the plain meaning of the word "impose" precludes using that word to describe a court's action in reducing a sentence under Section 3582(c), which, consistent with *Dillon*, is not subject to the rules of *Apprendi* and *Alleyne*.

5   Courts are unanimous in ruling that Rule 43 applies to motions under Section 404 of

16

not warrant the application of *Apprendi* or *Alleyne*.[6]

30.     Since the holding in *Dillon*, every appellate court to address the issue has held

that a court, when determining whether a defendant is eligible for a sentencing reduction under

Section 3582(c)(2) based on a retroactive amendment to the narcotics sentencing guideline,

which is driven by drug quantity, may make factual findings based on the original record to

determine whether the offense involved a quantity that results in the same sentencing range

under the amended guideline and therefore renders the defendant ineligible for relief. *See, e.g.*,

*United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014); *United States v. Peters*, 843 F.3d 572,

578 (4th Cir. 2016); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012); *United States

v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v. Anderson*, 707 F.3d 973, 975 (8th

Cir. 2013); *United States v. Mercado-Moreno*, 869 F.3d 942, 953–55 (9th Cir. 2017); *United

States v. Battle*, 706 F.3d 1313, 1319 (10th Cir. 2013); *United States v. Hamilton*, 715 F.3d 328,

340 (11th Cir. 2013); *United States v. Wyche,* 741 F.3d 1284, 1293 (D.C. Cir. 2014). In

reasoning that is directly applicable to the present situation as well, the Ninth Circuit explained:

> Typically, in those cases, neither the court nor the parties anticipate a future Guidelines amendment that will move the line and require further fact-finding to determine the defendant's eligibility for a sentence reduction under § 3582(c)(2).

---

the First Step Act and therefore no hearing or plenary resentencing proceeding is required. *See, e.g.*, *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *United States v. Glover*, 2019 WL 1924706, at *9-10 (S.D. Fla. May 1, 2019); *United States v. Kamber*, 2019 WL 399935, *2 (S.D. Ill. Jan. 31, 2019); *United States v. Perkins*, 2019 WL 1578367, at *3 (N.D. Iowa Apr. 3, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Shelton*, 2019 WL 1598921, at *2 (D.S.C. Apr. 15, 2019); *United States v. Coleman*, 2019 WL 1877229, at *8 (E.D. Wis. Apr. 26, 2019).

6   The *Dillon* Court further stated: "The substantial role Congress gave the Commission with respect to sentence-modification proceedings further supports this conclusion." *Dillon*, 560 U.S. at 826. That feature is absent here, but the remainder of the *Dillon* Court's statutory analysis fully supports the conclusion suggested here, as explained above.

> In those cases where a sentencing court's quantity finding is ambiguous or incomplete, a district court may need to identify the quantity attributable to the defendant with more precision to compare it against the revised drug quantity threshold under the relevant Guidelines amendment. The Supreme Court indicated that such fact-finding was permissible in *Dillon*. *See* 560 U.S. at 828-29 (stating that "facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment").

*Mercado-Moreno*, 869 F.3d at 954. The same fact-finding is necessary here to compare the drug quantity attributable to the defendant against the revised drug quantity thresholds under the FSA, and is not restricted by *Apprendi* and *Alleyne*. In this case, however, the fact-finding is clear: It is clear that the defendant's offense involved in excess of 280 grams of crack cocaine.

31.     It also bears emphasis that any reduction in sentence under the First Step Act must comport with Section 3582(c)(1)(B), which states, "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." The First Step Act allows imposition of a reduced sentence as if the FSA "were in effect at the time the covered offense was committed." It does not "expressly" authorize the retroactive application of *Apprendi* and *Alleyne*, which are inapplicable for this reason as well. Courts are unanimous in

holding that *Apprendi*[7] and *Alleyne*[8] do not apply retroactively to undermine an otherwise final judgment, and Congress did not expressly state otherwise here. It did not decree that only this small set of offenders sentenced before August 3, 2010—those who committed crack cocaine offenses for which the statutory sentencing ranges have changed—may receive consideration under *Apprendi* and *Alleyne*, while no one else may.[9]

---

7  *Apprendi* does not apply retroactively on collateral review. *Love v. Menifee,* 333 F.3d 69, 73 (2d Cir. 2003); *United States v. Swinton*, 333 F.3d 481 (3d Cir. 2003); *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001); *United States v. Brown*, 305 F.3d 304, 307-10 (5th Cir. 2002); *Goode v. United States*, 305 F.3d 378, 382 85 (6th Cir. 2002); *Curtis v. United States*, 294 F.3d 841, 842 44 (7th Cir. 2002); *United States v. Moss*, 252 F.3d 993, 997 1001 (8th Cir. 2001); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667-71 (9th Cir. 2002); *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002); *McCoy v. United States*, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), consistent with all of these decisions, the Supreme Court held that *Ring v. Arizona*, 536 U.S. 584 (2002), which, in reliance on *Apprendi*, held that aggravating circumstances in a death penalty prosecution must be found by a jury rather than a judge, does not apply retroactively on collateral review. The Court explained that judicial factfinding might actually be more accurate, and in any event does not so "seriously diminish" accuracy that there is an "'impermissibly large risk'" of punishing conduct the law does not reach. 542 U.S. at 355-56 (citations omitted).

8  *Alleyne* does not apply retroactively on collateral review. *Butterworth v. United States*, 775 F.3d 459, 465-468 & n.4 (1st Cir. 2015); *United States v. Redd*, 735 F.3d 88, 91-92 (2d Cir. 2013) (per curiam); *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014); *United States v. Stewart*, 540 F. App'x 171 (4th Cir. 2013) (per curiam) (unpublished); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (per curiam); *In re Mazzio*, 756 F.3d 487, 489-91 (6th Cir. 2014); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *Walker v. United States*, 810 F.3d 568, 575 (8th Cir. 2016); *Hughes v. United States*, 770 F.3d 814, 817-19 (9th Cir. 2014); *In re Payne*, 733 F.3d 1027, 1029-30 (10th Cir. 2013) (per curiam); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014).

9  In contrast, where Congress authorizes *de novo* resentencing, it states that authority explicitly. *See, e.g.*, 18 U.S.C. § 3742(f) and (g) (resentencings on remand following direct appeal); 28 U.S.C. § 2255(b) (resentencings in habeas context).

32.     This Court therefore can and should determine whether the defendant's violation involved quantities that would have triggered the same penalties had the FSA been in effect. There is no conflict with *Apprendi* or *Alleyne*, in that the government is not asking the district court to make findings that increase the statutory mandatory minimum or maximum for the offense. Here, for reasons based on the district court finding that the trial record supported a drug quantity of between 500 grams and 1.5 kilograms, it is evident that the same statutory range would have applied, and the defendant is not eligible for relief.

33.     The Eleventh Circuit has agreed with the denial of a First Step Act motion, because the triggering quantities, over 5 kilograms, far exceeded the 280 gram amended amount. *United States v. Means*, 2019 WL 4302941 at *2 (11th Cir. September 11, 2019). The First Step Act modified the triggering drug quantities, but not the process by which the district court imposes a sentence, including its ability to determine the drug quantity attributable to a defendant. *Id*. While the district courts have not uniformly adopted the government's approach (or any other approach, for that matter), multiple courts have agreed that a defendant is not eligible where the drug quantity involved in the case warranted the same statutory sentence. For example, in *United States v. Blocker*, 2019 WL 2051957 (N.D. Fla. Apr. 25, 2019), district court observed that the defense position "would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack defendants." *Id.* at *5. The court identified another problem in the defense position:

> Similarly, the Fair Sentencing Act was intended to lower the sentencing disparity between crack and powder, changing the 100-to-1 drug-amount ratio to approximately 18-to-1. The First Step Act was intended to give that same benefit to earlier crack defendants. The offense-controls theory [determining eligibility based on actual conduct] accomplishes that result. But if sentences for crack offenses are now lowered based on

20

the indictment-controls theory [looking only to the charge in the indictment], an enormous disparity will be created in the opposite direction. Many defendants who committed crack offenses prior to adoption of the Fair Sentencing Act will be subject to lower penalty ranges than defendants who committed offenses involving the same amount of powder.

Consider, for example, two defendants, one who conspired in 2007 to distribute 5 kilograms of powder, and the other who conspired to distribute 5 kilograms of crack, both with two prior felony drug convictions. In 2007, before adoption of the Fair Sentencing Act, both would have been subject to mandatory life sentences—the powder defendant because the offense involved 5 kilograms or more, and the crack defendant because the offense involved 50 grams or more. The indictments would have tracked the statute, so the powder defendant's indictment would have charged 5 kilograms or more of powder, and the crack defendant's indictment would have charged 50 grams or more of crack. If both were convicted, both would have faced mandatory life sentences.

Under the offense-controls theory, nothing would change. Both defendants would still be subject to mandatory life sentences, just as two defendants who committed the same offenses today would be subject to mandatory life sentences.[10] There is no reason to believe Congress intended any different result.

But under the indictment-controls theory, the crack defendant would now face a minimum of only 10 years, not life, because he would be treated as having committed an offense involving only 50 grams of crack—not 280 or more as required to trigger the life sentence. This would be the result even though the offense actually involved 5 kilograms of crack and the government could prove it. The powder defendant, in contrast, would continue to serve the mandatory life sentence, because nothing in the Fair Sentencing Act or First Step Act allows a sentence reduction for a defendant whose offense involved only powder. Congress could not have intended to treat crack defendants this much more favorably than powder defendants.

*Id.* at *6; *see also*, *United States v. Willis*, 2019 WL4849435 at *11 and *16-*21 (E.D. Penn. September 30, 2019) (relying on the ordinary meaning of the words in the statute to conclude "violation" means the facts or conduct underlying arrest and conviction, not simply the words in the indictment and finding two defendants ineligible for relief based on actual conduct), and

---

10   Actually, under Section 401 of the First Step Act, the mandatory penalty in this hypothetical would be 25 years for offenders sentenced after December 21, 2018. But that provision does not apply retroactively to anyone sentenced earlier, and thus does not detract from the force of Judge Hinkle's explanation.

*United States v. Russo*, 2019 WL 1277507, at *1 (D. Neb. Mar. 20, 2019). ("[T]he Court cannot conclude that the First Step Act anticipates a full re-sentencing with application of laws and Guidelines that have changed since a defendant's original sentencing, other than the retroactive application of the reduced penalties for crack cocaine set out in the FSA. If the Court were to engage in such a re-sentencing, applying other laws and Guidelines that have been changed since Russo's original sentencing, it would work an injustice to offenders sentenced in the past who did not have a crack cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010.").

34.    Several other courts thus far have agreed that eligibility is determined based on the actual quantity involved in the offense. *See, United States v. Dennis*, 2019 WL 3936449 at *2-*3 (S.D. Ala. August 20, 2019) (although statutory penalties amended by FSA, the defendant was not eligible for relief because is conviction for possession with intent to distribute 34 grams of crack carried the same statutory penalties); *United States v. Banuelos,* 2019 WL 2191788 (D.N.M. May 21, 2019) (agrees with the government's quantity argument; to avoid disparity, would also deny relief as a matter of discretion); *United States v. Haynes,* 2019 WL 1430125, at *2 (D. Neb. Mar. 29, 2019); *United States v. Howard,* 2019 U.S. Dist. LEXIS 109055 (D. Neb. June 28, 2019); *United States v. Potts,* 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *cf. United States v. Glover,* 2019 WL 1924706, at *7 (S.D. Fla. May 1, 2019) (Lenard, J.) (holding that Apprendi does not apply to a resentencing under Section 404); *United States v. Washington*, 2019 WL 2410078, at *2 (S.D. Fla. June 7, 2019) (Rosenberg, J.) (denying motion to reduce term of supervised release, holding that the First Step Act does not permit reconsideration of "extraneous" issues such as application of *Apprendi* and *Alleyne).*

35.     Many other district courts have reached contrary conclusions, and determined

eligibility limited to the pre-Fair Sentencing Act quantity charged in the indictment.[11] For

instance, in a statement relied upon by many other courts, the district court in *United States v.*

*Davis*, 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), simply declared reliance on the "plain

language" of the First Step Act, adding, "it is the statute of conviction, not actual conduct, that

---

[11]     *See United States v. Allen*, 2019 WL 1877072, at *3 (D. Conn. Apr. 26, 2019);
*United States v. Lee*, 2019 WL 2617262, at *1 (M.D. Fla. June 26, 2019); *United States v. Razz*,
2019 WL 2204068, at *7-8 (S.D. Fla. May 22, 2019) (Lenard, J.); *United States v. Anderson*,
2019 WL 2410077, at *1 (S.D. Fla. June 7, 2019) (Rosenberg, J.); *United States v. Booker*, 2019
WL 2544247, at *4 (N.D. Ill. June 20, 2019) (Lefkow, J.); *United States v. Johnson,* 2019 WL
2590951 (N.D. Ill. June 24, 2019) (Leinenweber, J.); *United States v. Dodd*, 2019 WL 1529516,
at *2-3 (S.D. Iowa Apr. 9, 2019); *United States v. Lutcher*, 2019 WL 3006414 (E.D. La. July 10,
2019) (Africk, J.); *United States v. Boulding,* 2019 WL 2135494 (W.D. Mich. May 16, 2019)
(Jonker, C.J.) (holding with no statutory analysis that anyone convicted under 841(b)(1)(A) or
841(b)(1)(B) is eligible for consideration); *United States v. Broussard*, 2019 U.S. Dist. LEXIS
72844, at *5-6 (D. Minn. Apr. 19, 2019); *United States v. Paulino*, 2019 WL 2437214 (D.N.M.
June 11, 2019); *United States v. Simons*, 2019 WL 1760840, *6 (E.D.N.Y. Apr. 22, 2019)
(Weinstein, J.); *United States v. Martin*, 2019 WL 1558817, *3 (E.D.N.Y. Apr. 10, 2019)
(Cogan, J.); *United States v. Martin,* 2019 U.S. Dist. LEXIS 103559 (E.D.N.Y. June 20, 2019)
(Korman, J.); *United States v. Rose*, 2019 WL 2314479, at *3-5 (S.D.N.Y. May 24, 2019)
(Caproni, J.); *United States v. Williams*, 2019 WL 2865226 (S.D.N.Y. July 3, 2019) (Oetken, J.);
*United States v. Martinez*, 2019 WL 2433660 (S.D.N.Y. June 11, 2019) (Rakoff, J.); *United
States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Jones*, 2019
WL 2480113 (E.D.N.C. June 11, 2019); *United States v. Pugh*, 2019 WL 1331684, at *3 (N.D.
Ohio Mar. 25, 2019) (Gaughan, J.); *United States v. Stone*, 2019 WL 2475750 (N.D. Ohio June
13, 2019) (Nugent, J.); *United States v. Easter*, 2019 WL 2602160, *2 n.1 (M.D. Pa. June 25,
2019) (Rambo, J.); *United States v. Pierre*, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019);
*United States v. Burke*, 2019 WL 2863403, at *4 (E.D. Tenn. July 2, 2019) (Greer, J.); *Wright v.
United States,* 2019 WL 3046096, at *5 (E.D. Va. July 11, 2019); *United States v. Stanback,*
2019 WL 1976445, at *3 (W.D. Va. May 2, 2019) (Urbanski, C.J.); *United States v. Laguerre*,
2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019) (Dillon, J.); *United States v. Pride*, 2019 WL
2435685 (W.D. Va. June 11, 2019) (Jones, J.); *United States v. Latten*, 2019 WL 2550327, at *2-
3 (W.D. Va. June 20, 2019) (Jones, J.); *United States v. Herbert*, 2019 U.S. Dist. LEXIS 108364
(W.D. Va. June 28, 2019) (Moon, J.); *United States v. Glore*, 2019 WL 1060838, at *6 (E.D.
Wis. Mar. 6, 2019); *United States v. Shaw*, 2019 WL 2477089 (W.D. Wis. June 13, 2019); *see
also United States v. Francis*, 2019 WL 1983254, *2 (S.D. Ala. May 3, 2019) (declining to look
to original findings to determine statutory penalties, but relying on original findings to assess
amended guideline range).

controls eligibility under the First Step Act," without any assessment of the statutory analysis

presented here. *Id.* at *2-3.

36.     Only the court in *United States v. Rose*, 2019 WL 2314479 (S.D.N.Y. May 24,

2019), engaged the statutory text, albeit unpersuasively. *Rose* focused on the relevant language—

"a violation of a Federal criminal statute, the statutory penalties for which were modified by

section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3,

2010"—and stated:

> The Government's reading of § 404(a) depends on two erroneous interpretative choices.
> First, the Government construes the dependent clause, "the statutory penalties for which
> were modified by section 2 or 3 of the Fair Sentencing Act of 2010" (hereinafter
> "penalties clause"), as modifying the noun "violation," rather than modifying the phrase
> "Federal criminal statute." Next, the Government construes "violation" to mean the
> actual conduct underlying the offense, rather than the elements of the offense. When
> given its most natural reading, the "penalties" clause modifies the adjacent noun phrase,
> "Federal criminal statute."

*Rose*, 2019 WL 2314479, at *3. *See also*, *United States v. Johnson*, 2019 WL 3938472 (N.D.

Iowa August 20, 2019); and *United States v. Dodd*, 2019 WL 1529516 (S.D. Iowa April 9,

2019).

37.     However, the term, "the statutory penalties for which were modified," more

naturally relates to the entire phrase, "a violation of a Federal criminal statute," than to only the

final four words. As discussed above, that is the better reading for multiple reasons. First, if one

construes the phrase "the statutory penalties for which" as modifying only "Federal criminal

statute" and not the full phrase "a violation of a federal criminal statute," then every defendant

convicted under Section 841, for any drug offense, would be eligible for a discretionary

resentencing. Second, this construction renders the word "statutory" redundant. Third, the

passage in full refers to a "violation . . . that was committed," terminology that, as explained

earlier, the Supreme Court has understood as referring to actual conduct, not statutory elements (*Rose* does not address that precedent). Fourth, and most significantly, in the relevant context, the only sensible interpretation is that "statutory penalties" relates to each violation. Posit, for instance, a person who before August 3, 2010, was charged with and admitted an offense involving ten kilograms of crack cocaine. The Fair Sentencing Act did not change the statutory penalties for that substantial crime, and in fact any person sentenced for exactly the same crime after August 3, 2010, would be subject to the same penalties that applied earlier. The *Rose* interpretation, however, would hold that the pre-August 3, 2010, offender may receive a lower sentence, just because the penalties for one "Federal criminal statute" in the abstract were altered. As explained throughout this brief, that result is manifestly at odds with Congressional intent.

38.     For all of these reasons, the grammatical parsing of the individual terms advocated in *Rose* is not persuasive. Rather, the phrase, "the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010," is a restrictive clause that applies to the full phrase, "a violation of a Federal criminal statute," as that reading is the only sensible interpretation in light of the manifest Congressional intent to treat identically offenders who were sentenced before and after passage of the Fair Sentencing Act.[12]

---

12   This would hold even if the *Rose* analysis had more grounding in rules of grammar than it does. It is long settled that the "'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose.'" *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012), citing *Costello v. INS*, 376 U.S. 120, 122-26 (1964)). "It has often been said that punctuation is not decisive of the construction of a statute. . . . Upon like principle we should not apply the rules of syntax to defeat the evident legislative intent." *Costanzo v. Tillinghast*, 287 U.S. 341, 344 (1932). *See also W. Union Tel. Co. v. Lenroot*, 323 U.S. 490, 510 (1945) (Murphy, J., dissenting) ("To sacrifice social gains for the sake of grammatical perfection is not in keeping with the high traditions of the interpretative process.").

39.     In *United States v. Allen*, 2019 WL 1877072 (D. Conn. Apr. 26, 2019), the court

did focus on "the purpose underlying the First Step Act," stating "that Congress wanted to

further the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that

had a racially disparate impact. *See Dorsey*, 567 U.S. at 268. Given this remedial purpose, the

First Step Act should be construed to provide courts with discretion to reduce a sentence when

the statute the defendant violated has been modified by the Fair Sentencing Act to provide less

severe penalties." 2019 WL 1877072, at *3. But it in no way advances the remedial purposes of

the Act to afford greater relief to a defendant than he would have received had his sentence been

imposed after enactment of the Fair Sentencing Act. Rather, it is the government's position here

that advocates and urges like treatment of like offenders, consistent with Congressional purpose,

with relief afforded to those whose statutory sentencing ranges were in fact lowered by the Fair

Sentencing Act, and denied to those whose ranges are unaffected.[13]

40.     *Allen* also suggested that *Apprendi* and *Alleyne* should apply, stating, "Congress

legislates in the context provided by constitutional principles." *Id.* at *4. Likewise, another court

stated, "Congress, when drafting the First Step Act in 2018, surely did not intend for courts to

disregard the last six years of Supreme Court federal sentencing jurisprudence and this court

declines to do so." *United States v. Stanback,* 2019 WL 1976445, at *3 (W.D. Va. May 2, 2019).

Under this same reasoning, however, Congress would have legislated in the context of prior

cases finding *Apprendi* and *Alleyne* were not retroactive. As explained above, under the

---

13   To date, courts have reduced the sentences of over 1,200 offenders under Section
404, almost all with the consent of the government, given that many pre-2010 offenders were
serving sentences based on actual crack quantities that are subject to lower penalties under the
2010 law.

constitutional landscape in recent years, *Apprendi* and *Alleyne* do not apply retroactively to

offenders whose judgments were final before those decisions were announced. It is the denial of

relief here—like the denial of relief under *Booker* that the Supreme Court affirmed in *Dillon*—

that is in fact consistent with recent law. As explained above, it should not be concluded that

Congress meant to afford such retroactive relief to a limited set of crack offenders that is not

extended to anyone else.

      41.     In *Pierre*, the district court took another approach, stating:

> The Government's approach, while reasonable, is problematic in several ways. First, it
> effectively requires the Court to employ a prosecutor-friendly "way-back machine" to
> conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing
> Act of 2010 been in effect. For example, here, the Court is not confident that a well-
> counseled defendant caught with 28.77 grams of crack cocaine and a reasonable
> prosecutor from this District would have reached a plea deal of 28 grams or more of
> crack cocaine, thereby triggering the mandatory minimum by a mere .77 grams of crack
> cocaine. Indeed, it seems likely in this Court's experience the parties would have agreed
> to a plea to a lower quantity.

*Pierre*, 2019 WL 1495123, at *5. In the *Blocker*, the court disagreed with this view, stating:

> Had the indictment charged the higher amount of crack—280 grams—on count one, it
> might or might not have affected Mr. Blocker's decision to plead guilty. The government
> would have relied on the same drug-amount evidence it relied on at that time and that it
> now relies on in response to the motion to reduce the sentence. Mr. Blocker might or
> might not have admitted that the conspiracy involved at least 280 grams of crack. Had he
> denied it, the government might or might not have been able to prove it beyond a
> reasonable doubt.
>
> It may not be possible now, after the fact, to resolve with certainty the question about
> what would have happened. But courts routinely resolve issues on which certainty is
> elusive, including issues like this one. Thus, for example, courts routinely must decide
> what would have happened when addressing ineffective-assistance-of-counsel claims on
> motions under 28 U.S.C. § 2255 or on petitions for writs of habeas corpus under 28
> U.S.C. § 2254.

*United States v. Blocker*, 2019 WL 2051957, at *4 (N.D. Fla. Apr. 25, 2019). In the present case,

there is no uncertainty. The same trial record that supported conviction in 2009, also supports the

attribution of at least 500 grams of cocaine base to McGee.

42.     Finally, some courts have cited the rule of lenity. *See Allen*, 2019 WL 1877072, at *3; *Pierre*, 2019 WL 1495123, at *5. But "[a]pplication of the rule of lenity requires more than a difficult interpretative question. Rather, '[t]o invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute.'" *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010), citing *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (internal quotation marks and citation omitted). The rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990). For all the reasons stated earlier, there is no such grievous ambiguity in the First Step Act. To the contrary, all tools of statutory interpretation point to the conclusion that an offender whose crack quantity supports the same penalty range under the FSA that was applied at the original sentencing proceeding is not eligible for relief.

## Denying Defendant Relief Does Not Violate *Apprendi* and *Alleyne*

43.     In *Apprendi*, 530 U.S. at 490, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In federal prosecutions, such facts must also be charged in the indictment. *Id.*, at 476. Based on similar principles, in *Alleyne* 570 U.S 99 at 108, the Supreme Court further held that facts that increase the mandatory minimum sentence are treated as elements and must be submitted to the jury and found beyond a reasonable doubt. In the Eighth Circuit, neither *Apprendi* nor *Alleyne* have been found retroactive. *Walker v. United States*, 810 F.3d 568, 575 (8th Cir. 2016). Although collaterally noting that drug quantity is a necessary component of future indictments, the essential Sixth

28

Amendment principle required to increase the maximum or minimum sentence is proof beyond a reasonable doubt of the threshold drug quantity. It is this higher quantum of proof that is necessary to comply with the Sixth Amendment.

44.      The government asserts that any technical defect in the prior Superseding Indictment which failed to allege FSA drug thresholds does not preclude application of a FSA amended mandatory minimum, if the higher drug quantity was undisputed, affirmed by the clear record, or stipulated to by defendant. While the First Step Act makes FSA retroactive, it does not expressly make either *Apprendi* or *Alleyne* retroactive. More importantly, the First Step Act does not purport to treat defendant's charged with crack cocaine offenses before August 3, 2010, any different than after. To the contrary, the intent of the Act is to treat them the same.

45.      Support for treating them the same is found in the plain language of the First Step Act, and prior decisions applying the FSA. Section 404(c) states, "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." Prior decisions concluded that a failure to allege FSA quantities in a pre-FSA indictment did not alone constitute error under *Apprendi* or *Alleyne. See*, *United States v. Cotton*, 535 U.S. 625, 632-33 (2002) (concluding that a failure to allege pre-*Apprendi* drug quantities in an indictment was not plain error when evidence of the drug quantity was overwhelming and uncontroverted); *United States v. Higgins*, 710 F.3d 839, 846 (8th Cir. 2013) (finding a technical defect in an indictment for not alleging FSA drug quantities did not seriously affect the fairness and integrity of judicial proceedings and was not plain error); and *United States v. Goodrich*, 754

29

F.3d 569, 572 (8th Cir. 2014) (reasoning that it was insufficient to show that an indictment was technically defective for listing 50 grams instead of 280 grams, when the district court made explicit drug findings that the conspiracy involved in excess of 280 grams). Treating them the same, a failure to previously allege a drug quantity of 280 grams in a pre-FSA Indictment does not prohibit application of the same mandatory minimum based on an undisputed or stipulated drug quantity in excess of 280 grams of cocaine base.

46.     Nothing in the First Step Act suggests that Congress intended to adopt a different methodology now. The First Step Act only directs the court to examine a sentence as if Sections 2 and 3 of the FSA were in effect at the time, not to change the manner of charging or determining drug quantity. The basis for a Sixth Amendment violation in *Apprendi* and *Alleyne*, was increasing a defendant's minimum or maximum sentence, based on a judicial fact finding at a standard less than beyond a reasonable doubt. And such a determination at this time does not offend *Apprendi* or *Alleyne,* as it does not involve any *increase* in a sentence based on judge-found facts. To the contrary, the First Step Act only authorizes a court to "reduce" a sentence, and further makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *See Dillon*, 560 U.S. at 828-29 (holding that a court need not apply *Booker v. United States,* 543 U.S. 220 (2005), which rendered the Guidelines advisory, to remedy a violation of *Apprendi* where the court is considering only whether to reduce a sentence based on a retroactive guideline amendment).

47.     Even if this technical defect in the Superseding Indictment constituted some sort of "error," defendant has not asserted that he made a timely challenge to the allegation that more than 280 grams (as opposed to more than 50 grams) needed to be included in the Indictment. At best, this would be subject to plain error review, which, under similar circumstances, the

Supreme Court explicitly denied for *Apprendi* and *Alleyne* issues involving drug quantity in *Cotton*, 535 U.S. at 632-35; *Goodrich*, 754 F.3d at 572; and *Higgins*, 710 F.3d at 846; and *United States v. Soltero-Corona*, 258 F.3d 858, 860 (8th Cir. 2001). Given that the trial record supported a finding of more than 500 grams of crack cocaine, any error did not substantially affect the proceedings fairness, integrity or public reputation. Indeed, given the district court's finding that based on the trial record, McGee was responsible for between 500 to 1.5 kilograms of cocaine base, any "error" also should be deemed harmless. *See generally United States v. Allen*, 406 F.3d 940 (8th Cir. 2005) (failure to allege statutory aggravating factor in indictment subject to harmless error review).

48.     As a final note, even if this Court disagrees with our legal assessment of eligibility, and finds McGee was convicted of a "covered offense," then it should impose a sentence at the high end of the current Guidelines range of 210 months' imprisonment. McGee denied responsibility for his crime, and committed obstruction of justice with false testimony and a lack of remorse at his November 2009 sentencing hearing. McGee's criminal history included the following convictions: 2001-Manufacture or Deliver Cocaine; 2002-Manufacture or Deliver Cocaine; 2006-Soliciting Unlawful Business (selling "rocks,"); 2007-OWI; 2007 Disorderly Conduct; and 2007-Possession of Marijuana. (PSR ¶¶ 71-77.) At that time, the district court found him responsible for over 500 grams, but less than 1.5 kilograms of crack cocaine.

49.     For the same reasons, McGee should not be eligible for a variance. The narrow direction of the First Step Act allows the district court to "impose a sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." This language and the application of § 3582(c)(1)(B) allow only for a reduction in sentence, not a re-sentencing. Any discretion of the district court is limited to whether to reduce the sentence or

31

not. The defendant should not receive a windfall not available to defendants prosecuted for the same conduct under the FSA, who received sentences based on quantity determinations keyed to the thresholds set forth in that Act. Further, based on the same facts noted above, any further variance is not warranted. A contrary result here would offend "the need to avoid unwarranted sentencing disparities among" similarly situated offenders under 18 U.S.C. § 3553(a)(6), and the need for a sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense" under Section 3553(a)(2)(A). *See Dorsey*, 567 U.S. at 276-79 (expressing the importance of consistency in sentencing similarly situated offenders when determining the retroactive application of a statutory amendment). Relief in this matter should therefore be denied.

WHEREFORE, for the reasons stated above, the government prays that the district court find that McGee is not eligible for relief under the First Step Act, and if the district court does find McGee is eligible, impose a sentence of 210 months' imprisonment.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By:    */s/ Richard D. Westphal____*
Richard D. Westphal
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa 50309-2053
(515) 473-9300
Rich.Westphal@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2019, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.   I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

_____U.S. Mail _____ Fax _____Hand Delivery

____x___ECF/Electronic filing _____Other means

UNITED STATES ATTORNEY

By: */s/ Richard D. Westphal*
    Richard D. Westphal